Argued March 15, modified April 30, 1929.

COOS BAY AMUSEMENT CO. *v.* AMERICAN RAILWAY EXPRESS CO.

(277 Pac. 107.)

For appellant there was a brief over the name of *Messrs. McCamant & Thompson*, with oral arguments by *Mr. Wallace McCamant* and *Mr. Ralph H. King.*

For respondent there was a brief over the name of *Mr. J. W. McInturff*, with an oral argument by *Mr. Wm. T. Stoll.*

BELT, J.—This is an action to recover damages from the defendant, a common carrier engaged in interstate commerce, for failure to deliver a moving-picture film consigned by the United Artists' Corporation of Seattle, Washington, for transportation to the plaintiff at Marshfield, Oregon. The metal container delivered to the defendant on April 15, 1927, was addressed in a conspicuous place ''Egyptian Theatre, Marshfield, Oregon.'' ''Rush. Moving Picture Film.'' According to plaintiff, had the express company not been negligent the film would have been delivered at Marshfield not later than noon on April 18, 1927. The film never reached Marshfield, but through mistake was delivered to some person at Portland, Oregon. Plaintiff asserts that, on account of the negligence of defendant, it was

unable to exhibit the film and, by reason thereof, sustained special damages aggregating $237.95.

Defendant admits receipt of the shipment and its misdelivery. It asserts, however, that the shipment was made upon a rate based on a declared valuation of $50 and, in consideration of this low rate, it was agreed that the liability of the defendant should in no event exceed the sum of $50.

The trial court directed the jury to return a verdict in favor of plaintiff for $237.95. Defendant appeals.

■ ■ On oral argument counsel for plaintiff moved to strike the bill of exceptions from the files for the reason that it had not been presented to the trial court for settlement within the time allowed by the rules of that court. The bill of exceptions on file in this court was signed by the trial judge, who certified that it was presented within the time allowed. After the bill of exceptions was filed here, the trial judge, however, by a subsequent certificate stated:

"When appellant presented and served its proposed bill of exceptions 57 days had elapsed since entering the judgment, and no order had been made extending the time within which a proposed bill of exceptions should be submitted; that at all such times there was a rule in force in this district as follows: 'Rule 9, Bills of Exceptions. Objections Thereto: Bills of Exceptions must be prepared, served upon opposite counsel and presented within twenty days from the entry of judgment or order denying motion for a new trial to the Judge before whom the case was tried * * .''

Judge SKIPWORTH, in the exercise of his discretion, saw fit to sign this bill of exceptions and we are inclined to give it force and effect notwithstanding the

supplemental certificate: *Weinstein* v. *Wheeler* (Or.) 257 Pac. 20, is controlling. Furthermore, since no written motion to. strike the bill of exceptions was filed here and served upon opposing counsel the objection under Rule 23 of this court is deemed to have been waived.

The sole question for consideration is whether the. receipt or bill of lading issued by the express company and signed by the shipper determines the extent of liability for failure to deliver the picture film. It is well settled that Congress, in the exercise of its constitutional powers, may define the liability of a carrier engaged in interstate commerce: *Adams Express Co.* v. *Croninger*, 226 U. S. 491 (57 L. Ed. 314, 33 Sup. Ct. Rep. 148, 44 L. R. A. (N. S.) 257). The Carmack Amendment to Section 20 of the Interstate Commerce Act, enacted by Congress in 1906 (34 Stat. L. 595) had the effect of superseding all state legislation on the subject of limitation of liability of interstate carriers. Prior to this amendment there was much conflict among the state courts relative to this question. Since Congress has vested the Interstate Commerce Commission with power to regulate and determine rates charged by interstate carriers, the decisions of the United States Supreme Court control. Section 20 of the Interstate Commerce Act, as amended by the Carmack Amendment, the first Cummins Amendment of 1915 (38 Stat. L. 1196) and the second Cummins Amendment of 1916 (39 Stat. L. 441), so far as it concerns the property involved in this controversy, unquestionably vested the Interstate Commerce Commission with power to authorize a carrier engaged in interstate commerce to limit its liability by contract with the shipper. In the instant case the shipper signed a "Uniform Ex-

press Receipt'' wherein there was a declared valuation of $50, and which incorporated the following terms and conditions:

"In consideration of the rate charged for carrying said property, which is dependent upon the value thereof and is based upon an agreed valuation of not exceeding fifty dollars for any shipment of 100 pounds or less, and not exceeding fifty cents per pound, actual weight, for any shipment in excess of 100 pounds, unless a greater value is declared at the time of shipment, the shipper agrees that the company shall not be liable in any event for more than fifty dollars for any shipment of 100 pounds or less, or for more than fifty cents per pound, actual weight, for any shipment weighing more than 100 pounds, unless a greater value is stated herein. Unless a greater value is declared and stated herein the shipper agrees that the value of the shipment is as last above set out and that the liability of the company shall in no event exceed such value.''

Otherwise stated, plaintiff, in consideration of having obtained the lowest rate published and on file with the Interstate Commerce Commission, expressly agreed to release the defendant from liability in excess of $50 for any ''loss, damage or injury,'' to property shipped. In *Kansas City Southern R. Co.* v. *Carl*, 227 U. S. 639 (57 L. Ed. 683, 33 Sup. Ct. Rep. 391), it was said:

'' * * when a shipper delivers a package for shipment and declares a value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped, upon plain principles of justice, from recovering, in case of loss or damage, any greater amount.''

Counsel for plaintiff concedes that there would be a limited liability in this case if there had been a ''loss, damage or injury,'' to the property, but asserts

that this is an action to recover damages for delay in shipment. This contention is inconsistent with the allegations of the complaint that "defendant utterly failed to deliver the property on that date, or at all." As a matter of fact, we are concerned with a case of wrongful delivery and not one of delayed shipment. We think, however, that the language of the federal act is broad and comprehensive enough to include damages sustained by either delayed shipment or wrongful delivery. As stated in *Georgia, Florida and Alabama Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 190 (60 L. Ed. 948, 36 Sup. Ct. Rep. 541).

"When the goods have been misdelivered there is as clearly a 'failure to make delivery' as when the goods have been lost or destroyed; * * ."

It was said in *New York, Philadelphia & Norfolk R. R. Co.* v. *Peninsula Produce Exchange of Maryland,* 240 U. S. 34 (60 L. Ed. 511, 36 Sup. Ct. Rep. 230, L. R. A. 1917A, 193).

"The words 'any loss, damage, or injury to such property' * * are comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination."

Also see Roberts Federal Liabilities of Carriers, Section 337. A few state decisions apparently support plaintiff's contention that delay in shipment is not embraced within the meaning of the federal act, but the decisions of the United States Supreme Court are to the contrary and by them we must be bound: *George* v. *Spokane, P. & S. Ry. Co.*, 124 Or. 598 (265 Pac. 408).

■ Finally it is contended by plaintiff that it is not alleged nor proven that the Interstate Commerce

Commission has expressly authorized defendant to establish and maintain rates dependent upon a declared valuation. We see no merit in this contention. Defendant introduced in evidence a certified copy of its schedule of rates filed by it with the Interstate Commerce Commission. In *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Rankin,* 241 U. S. 319 (60 L. Ed. 1022, 36 Sup. Ct. Rep. 555, L. R. A. 1917A, 265), quoted with approval in *American Railway Express Co.* v. *Lindenburg,* 260 U. S. 584 (67 L. Ed. 414, 43 Sup. Ct. Rep. 206), it was said:

"It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the Federal statutes or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct."

The judgment entered by the lower court for $237.95 is set aside and one is hereby entered in favor of plaintiff and against the defendant in the sum of $50.                                                    MODIFIED.

BEAN, BROWN and RAND, JJ., concur.