PHILLIP CHAZEN and MOLLIE CHAZEN

*v.*

TRAILMOBILE, INC.

384 S.W.2d 1.

(*Knoxville*, September Term, 1964.)

Opinion filed November 12, 1964.

J. H. DOUGHTY, of HODGES, DOUGHTY & CARSON, LEWIS HOWARD, of DONALDSON, MONTGOMERY & KENNERLY, Knoxville, for plaintiffs in error.

88

SAM F. FOWLER, JR., of FOWLER, ROWNTREE & FOWLER, Knoxville, for defendant in error.

See also 51 Tenn.App. 576; 370 S.W.2d 840.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The plaintiffs leased a building they owned to the defendants for use by the defendants in their business. In the scope of their business, the defendants repair trailers used in connection with tractor-trailer rigs in heavy over-the-road hauling. While an employee of the defendants was using a torch in the repair of a trailer he set fire to certain inflammable portions of it. With the knowledge that the trailer was susceptible to ignition and burning, the employee of the defendants continued to use the torch and set fire to the trailer which, in turn, set fire to the premises resulting in a considerable loss due to the fire. The plaintiffs sued the defendants on what amounted to common law negligence allegations and recovered a judgment but the case was reversed in favor of the defendants upon an appeal to the Court of Appeals, Eastern Section, and we denied certiorari.

The plaintiffs then began again to sue the defendants, this time alleging a breach of a covenant in the lease agreement to return the premises in as good condition as they were when leased. To this allegation the defendants demurred setting out the lease agreement itself and certain clauses specifically as a defense. The demurrer was sustained and the plaintiffs now appeal to this Court.

At issue are the following provisions in the lease and the correct interpretation to be placed thereon. On page 3 under "improvements and repairs":

"The Lessee covenants to take said property, with the repairs agreed upon by a separate letter hereto attached, and to keep said property in good condition, and at its own cost and expense make all alterations, improvements and all necessary repairs to the premises herein leased, * * * and at the end of said term the Lessee is to return said premises in as good condition as when received, ordinary wear, tear and damage by fire or unavoidable casualty excepted."

On page 6 under "premises rendered unfit":

"No compensation or claim shall be allowed by the Lessors by reason of damage, inconvenience or annoyance arising from the necessity of repairing or rebuilding any portion of the building or its equipment, however, the necessity may occur.

"The Lessors waive all right of recovery against the Lessee for any loss occurring to the demised premises resulting from fire * * *. (enumerating others) * * * and the Lessee likewise waives all right of recovery against the Lessor for any similar loss or losses * * *."

Plaintiffs argue from the foregoing, and from certain case law authority to be cited later, that the defendants

have breached the covenant to keep the premises in good repair by reason of allowing the torch work to continue when it had actual notice that such work had a tendency to ignite the premises.

The defendants answer that the waiver of the right to sue voluntarily entered into between the plaintiffs and the defendants, which was of a reciprocal nature, bars recovery by the plaintiffs notwithstanding the degree of negligence present in the action of the defendants' employee in starting the fire and notwithstanding the clause of the lease providing for return of the premises in good condition.

In support of their contention, plaintiffs rely upon the case of *Bishop v. Associated Transport, Inc.*, 46 Tenn. App. 644, 332 S.W.2d 696. In that case there was a provision in the lease similar to the one now in question. The lease contained the provision that the property was to be turned over to the lessor at the termination of the lease life in "reasonably good state of repair". There was, however, a specific exclusion of liability to the lessee for any damage resulting from fire.

The premises were destroyed by fire and the lessor sued the lessee, notwithstanding the lease provisions to the contrary, for the damage resulting from the fire. It was proved that the fire was arsonous in nature, being deliberately set by the sublessee, who was convicted of the crime.

The Court of Appeals said that the provision in the lease excluding fire from the liability of the lessee was intended to cover the loss by fire in the ordinary sense of the word, not by losses incurred as a result of a deliberately set fire. Because the fire in that case was

deliberately set, the court held that the covenant in the lease was breached and the lessee was liable for the damages.

It is urged on behalf of the defendants that the case cited, supra, does not have any direct bearing on the present facts because it deals with a unique set of facts, those being concerned with arson and attendant liability to the lessee resulting therefrom. In no way do the defendants question the decision of Court of Appeals, rather it urges that the holding in the Bishop case, supra, is applicable to arson and not to negligence, no matter how gross or wilful it may be.

██ There is no disagreement within the various courts and jurisdictions over the fact that parties may contract to absolve themselves from liability, and this rule is applicable, and has been applied to the field of landlord and tenant. It has often been held that public policy is best served by freedom of contract and this freedom is prompted by allowing the parties to limit their liability for fire damage under lease agreements. *Hartford Fire Ins. Co. v. Chicago M. & St. P. R. Co.*, 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed 84; *Sears Roebuck & Co. v. Poling*, 248 Iowa 582, 81 N.W.2d 462.

"Whether an exception of liability for injury by fire includes a fire caused by the tenant's negligence depends on the intention of the parties, but, unless the exception clearly contemplates damage caused by the tenant's negligence, it will not be construed to except liability for such injury." 51 C.J.S. Landlord and Tenant sec. 414, p. 1162.

The foregoing quotation was cited with approval in the Iowa case of *Sears Roebuck & Co. v. Poling*, supra,

where the lessee cut a hole in a fire wall. A fire started next door and spread to the leased premises. The proof showed that the hole in the fire wall was the contributing factor in the spread of the fire. It is noteworthy that this action by the lessee was a violation of a municipal ordinance but it also constituted negligence which the court held was not excused by the provision in the lease limiting the liability of the lessee and relieving it from fire liability.

The provision in question there read, "premises will be in substantially as good condition as received, loss by fire, tornado, earthquake, or any unavoidable casualty and ordinary wear and tear excepted." The court noted there that no mention was made of the exception being applicable in the case of the negligence of the lessee.

The court cited with approval the following from 32 Am.Jur., Landlord and Tenant, sec. 783:

"A tenant is, however, liable for injury to his landlord from the destruction by fire of a building on the demised premises caused proximately by the tenant's negligence, even though the lease contains a provision that at the end of the term he shall yield possession 'subject to loss by fire'."

The only case in this jurisdiction having an analogous line with the issue herein is the Bishop case cited, supra. Despite the contention of the defendant, the case cites the rule on negligence from American Jurisprudence, just quoted, and says further:

"As suggested hereinabove, many authorities may be found to the effect that, where the covenant to return the property in good condition contains an exclusion of damage by 'fire and the elements', this exclusion

does not apply if they are the result of the negligence or misconduct of the lessee.''

The intention of this case seems to be to recognize the majority rule that there is liability on the lessee for a negligent fire notwithstanding an excepting covenant in the lease unless there is a clear intention on the part of the parties to include negligent fires within the coverage of the instrument. The court then seems to go farther and say that deliberate as well as negligent acts are within the meaning of this rule. With this we should agree. There are no Supreme Court cases in this State setting forth a definite rule in this respect and this case provides that opportunity.

■ The language in a covenant to a lease is to be construed most strongly against the person drafting the instrument and, in this case the plaintiffs drafted the lease, its clauses and covenants.

■ The provision on page six of the lease states that *all* right of recovery is waived for *any loss resulting from fire*. This is language of great strength and it is stronger than that found in the cases in which liability of the lessee was sustained. Therefore it is sufficiently clear from the language that the parties intended almost all liability from fire no matter how caused to be excluded.

In *Blinder v. United States Fire Ins. Co. of N. Y.,* D.C.Ill., 103 F.Supp. 902, the basic question was the validity of an agreement between the parties to limit the liability of the defendant bailee.

''In the view of the Court, however, the phrase 'any loss or damage to said article,' is intended to limit the liability of the bailee for loss, however caused, including a loss due to the bailee's own negligence. * * *

It follows, therefore, that, in order to have any meaning whatsoever, the limitation of liability must necessarily refer to losses due to the bailee's own negligence."

The court in this case and the holding, portions of which are cited, said that the phrase "any loss or damage to said article" limited liability of the bailee just as effectively as the phrase "any cause including our own negligence".

In *Coos Bay Amusement Co. v. American Ry. Express Co.*, 129 Or. 216, 277 P. 107, the court held that the words "any loss, damage or injury to such property" were comprehensive enough to include all damages resulting from the failure of the carrier to discharge its duty with respect to any part of the transportation of goods to the agreed destination.

The decision of the lower court in sustaining the defendants' demurrer is sustained.