Linda M. CRAWFORD,
Plaintiff–Appellant,

v.

Debra Gail BUCKNER, Larry Eugene Buckner, Tobe McKenzie, and McKenzie Development Corp., Defendants–Appellees.

Supreme Court of Tennessee,
at Knoxville.

Aug. 31, 1992.

H. Franklin Chancey, Banks & Associates, Cleveland, for plaintiff-appellant.

Fred M. Milligan, Milligan, Barry, Hensley & Evans, Chattanooga, for defendants-appellees.

Charles W. Burson, Atty. Gen. and Reporter, and Pamela Bingham Broussard, Asst. Atty. Gen., Nashville, for intervenor-appellee.

## OPINION

### ANDERSON, Justice.

The determinative issue raised in this appeal is whether an exculpatory clause in a residential lease bars recovery against the landlord for negligence which causes the tenant injury. The trial court granted the landlords' motion for summary judgment, holding that the tenant's tort action was barred by the exculpatory clause. The Court of Appeals affirmed. Because we conclude that the exculpatory clause is void as against public policy, we reverse the Court of Appeals and remand.

## FACTUAL BACKGROUND

On December 16, 1988, the plaintiff, Linda Crawford, rented an apartment from the defendants, Tobe McKenzie and McKenzie Development Corporation. As a condition of rental, Crawford was required to sign the defendants' standard form lease, which contained an exculpatory clause providing that:

> [t]enant agrees that the landlord, his agents and servants shall not be liable to tenant or any person claiming through tenant, for any injury to the person or loss of or damage to property for any cause. Tenant shall hold and save landlord harmless for any and all claims, suits, or judgments for any such damages or injuries however occurring.

On February 21, 1989, two months after Crawford rented her apartment, a fire started in the apartment of Debra and Larry Buckner, who lived in the apartment below the plaintiff. The fire quickly spread to the plaintiff's apartment, blocking her exit through the front, and only, door. To escape the fire, Crawford jumped from a window in her second story apartment. When she landed, the plaintiff suffered numerous injuries, partly due to the debris on the ground behind her apartment building.

Crawford later filed a tort action in Bradley County naming the Buckners, Tobe McKenzie, and McKenzie Development Corporation as defendants. The complaint alleged that the landlords were negligent in failing to maintain the fire alarm, the premises behind her apartment, and in continuing to allow the Buckners to reside at the apartment complex after numerous altercations and complaints. In addition, the plaintiff challenged the constitutionality of the Uniform Residential Landlord and Tenant Act, Tenn.Code Ann. §§ 66–28–101 to –28–517, which prohibits lease provisions limiting a landlord's liability to a tenant. The Act was not applicable to Bradley County at that time because the legislature had limited it to counties of more than 200,000 residents, which included only Davidson, Hamilton, Knox, and Shelby counties at the time of the Act's passage. *See* Tenn.Code Ann. § 66–28–102.[1] The plaintiff alleged that the limited application of the Act denied her equal protection of the law under the Fourteenth Amendment to the U.S. Constitution, and Article XI, § 8, of the Tennessee Constitution.

The landlord defendants answered that the plaintiff's action was barred by the exculpatory clause of the lease and filed a motion for summary judgment.

At the hearing on the landlords' motion for summary judgment, the trial court concluded the exculpatory clause in the lease was enforceable. The court also found that there was a rational basis for the legislature's decision to limit the Act's application to the largest counties in the state, and therefore upheld the constitutionality of the Act. As a result, the landlords' motion for summary judgment was granted. The Court of Appeals affirmed.

## EXCULPATORY LEASE PROVISIONS

■ An exculpatory clause in the context of a landlord-tenant relationship refers to a clause which deprives the tenant of the right to recover damages for harm caused

---

1. Section 66–28–102 has been amended, effective July 1, 1992, to extend the coverage of the Uniform Residential Landlord and Tenant Act to counties of more than 68,000 residents, except for the excluded counties of Rutherford, Sullivan, Washington, and Williamson counties. *See* 1992 Tenn.Pub.Acts ch. 995.

by the landlord's negligence by releasing the landlord from liability for future acts of negligence.

The rationale underlying the argument for enforceability of such clauses has often been based upon the doctrine of freedom of contract. Courts employing that reasoning have said:

> that the public policy in apparent conflict with the freedom of contract argument in real-estate lease exculpatory clause cases, namely, that a landlord should be liable for the negligent breach of a duty which is owed to his tenant, is subservient to the doctrine that a person has the right to freely contract about his affairs. Some cases, especially the older ones, have reasoned that the relationship of landlord and tenant is in no event a matter of public interest, but is purely a private affair, so that such clauses cannot be held void on purely public policy grounds.

John D. Perovich, Annotation, *Validity of Exculpatory Clause in Lease Exempting Lessor From Liability*, 49 A.L.R.3d 321, 325 (1973).

However, because of the burden-shifting effect of such clauses which grant immunity from the law, it is not surprising that their validity has been challenged and that courts have reached different conclusions as to their enforceability.

> As early as 1938 Williston recognized that while such exculpatory clauses were recognized as "legal", many courts had shown a reluctance to enforce them. Even then, courts were disposed to interpret them strictly so they would not be effective to discharge liability for the consequences of negligence in making or failing to make repairs. 6 Williston, *A Treatise on the Law of Contracts* § 1751C p. 4968 (Rev. ed. 1938).

*McCutcheon v. United Homes Corp.*, 79 Wash.2d 443, 486 P.2d 1093, 1095 (1971).

For example, courts have held that such clauses may be void as against public policy where the landlord had greater bargaining power so that the tenant must accept the lease as written, or where the tenant was unaware of or did not fully understand the clause's effect, or where the clause was overly broad or was unconscionable. *See* Annotation, *Validity of Exculpatory Clause*, 49 A.L.R.3d at 325–26.

The defendant contends that freedom to contract in the residential lease setting is the majority rule in the United States, and that holding exculpatory provisions in residential leases invalid on public policy grounds would require this court to adopt the minority rule. Our research of the cases in this area, however, demonstrates that there is no true majority rule. We find, as the Washington Supreme Court found, that there is no majority rule, "only numerous conflicting decisions, decisions concerned with contracts of indemnity, cases relating to property damage under business leases, and a disposition of the courts to emasculate such exculpatory clauses by means of strict construction." *McCutcheon v. United Homes Corp., supra,* 486 P.2d at 1096.

Tennessee courts have long recognized that, subject to certain exceptions, parties may contract that one shall not be liable for his negligence to another. *See Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188 (Tenn.1973) (customer assumed the risk of injury from negligence of health spa); *Chazen v. Trailmobile, Inc.*, 215 Tenn. 87, 384 S.W.2d 1 (1964) (commercial lease absolved both landlord and tenant from liability for loss resulting from fire); *Moss v. Fortune*, 207 Tenn. 426, 340 S.W.2d 902 (1960) (renter assumed the risk incident to injury from the hiring and riding of a horse); *Dixon v. Manier*, 545 S.W.2d 948 (Tenn.App.1976) (cosmetology customer assumed the risk of injury of a hair-straightening treatment). One exception, for example, is that a common carrier cannot by contract exempt itself from liability for a breach of duty imposed on it for the benefit of the public. *Moss v. Fortune, supra.*

Although the earlier cases recognized that there were exceptions to the rule made for the benefit of the public, no case considered the public interest issue until this Court's decision in *Olson v. Molzen*, 558 S.W.2d 429 (Tenn.1977). We held in *Olson*

that if an exculpatory provision effects the public interest, it is void as against public policy, despite the general rule that parties may contract that one shall not be liable for his negligence to another. *Id.* at 431–32. We said that an exculpatory contract signed by a patient as a condition of receiving medical treatment is invalid as contrary to public policy and may not be pleaded as a bar to the patient's suit for negligence. *Id.* at 432.

In the most recent case to consider an exculpatory clause, the Court of Appeals, in *Schratter v. Development Enterprises, Inc.*, 584 S.W.2d 459 (Tenn.App.1979), upheld the enforceability of an exculpatory clause in a residential lease under very similar facts to this case. There, a landlord was released by the clause from his agent's negligence which caused a fire in an apartment building, resulting in damage to a tenant. The intermediate court observed, however, that in *Olson* we had adopted a test to determine whether an exculpatory provision affects the public interest, and that several of the enumerated characteristics in the test were present in that case. The court also recognized that many states have, by legislative enactment or judicial decision, limited or prohibited broad exculpatory clauses in residential leases. *Id.*, 584 S.W.2d at 461. Despite the finding that some of the public interest criteria were present, the intermediate court in *Schratter* felt constrained to hold that the exculpatory provision in the tenant's lease barred his recovery, because of their belief that this Court had limited the *Olson* standard to professional service contracts. *Schratter*, 584 S.W.2d at 461.

The plaintiff here contends that the exculpatory provision in her lease falls squarely within the criteria set forth in *Olson*. As a result, the plaintiff argues that we should overrule *Schratter* and hold that the exculpatory provision in her lease is void as against public policy. In order to determine whether an exculpatory provision affects the public interest, we adopted the following criteria in *Olson* from *Tunkl v. Regents of University of California*, 60 Cal.2d 92, 383 P.2d 441, 32 Cal.Rptr. 33 (1963):

[a.] It concerns a business of a type generally thought suitable for public regulation.

[b.] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

[c.] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

[d.] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

[e.] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

[f.] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Olson*, 558 S.W.2d at 431. In adopting these factors, we stated that "[i]t is not necessary that all be present in any given transaction, but generally a transaction that has some of these characteristics would be offensive." *Id.*

■ Applying the *Olson* criteria to the facts of this case, first, we conclude a residential lease concerns a business of a type that is generally thought suitable for public regulation. Our conclusion is bolstered by the fact that the legislature of this state has seen fit to regulate this area, and that other states, such as Illinois, Maryland, Massachusetts, and New York, have enacted legislation regulating the residential landlord-tenant relationship. *See* John D. Perovich, Annotation, *Validity of*

*Exculpatory Clause in Lease Exempting Lessor From Liability,* 49 A.L.R.3d 321 (1973). *See also, Cappaert v. Junker,* 413 So.2d 378 (Miss.1982).

Second, it is clear we no longer live in an agrarian society where land, not housing, was the important part of a rental agreement. Nor do we live in an era of the occasional rental of rooms in a private home or over the corner grocery. Residential landlords offer shelter, a basic necessity of life, to more than a million inhabitants of this state. In 1990 in Tennessee, 32 percent of the total occupied housing units in the state were rental units.[2] Accordingly, it is self-evident that a residential landlord is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. In addition, a residential landlord holds itself out as willing to perform a service for any member of the public who seeks it. Therefore, we conclude that the residential landlord-tenant relationship falls within the second and third public interest criteria.

With respect to the fourth public interest criterion, as a result of the essential nature of the service and the economic setting of the transaction, a residential landlord has a decisive advantage in bargaining strength against any member of the public who seeks its services. A potential tenant is usually confronted with a "take it or leave it" form contract, which the tenant is powerless to alter. The tenant's only alternative is to reject the entire transaction.

Moreover, due to its superior bargaining position, a residential landlord confronts the public with a standardized adhesion contract of exculpation, which contains no provision whereby a tenant can pay additional reasonable fees to obtain protection from the landlord's negligence. The lease in this case is a good example. In her affidavit in opposition to the defendants' motion for summary judgment, Crawford testified that she was given the defendants' standard lease form to sign, and was never offered the opportunity to pay additional reasonable fees to obtain protection from the landlords' negligence. We determine that the residential landlord-tenant relationship falls within the fifth *Olson* criterion.

Finally, we conclude that by definition a residential lease places the person and the property of the tenant under the control of the landlord, subject to the risk of carelessness by the landlord and his agents. The allegations of this case and the *Schratter* case are common examples of landlord negligence causing injury to either the person or property of the tenant. Therefore, it follows that the landlord-tenant relationship falls within the final public interest criterion set forth in *Olson*.

Accordingly, we find that the residential landlord-tenant relationship here satisfies all six of the public interest criteria adopted in *Olson v. Molzen, supra.* The California Supreme Court has also held that a residential rental agreement meets all six of the criteria. *See Henrioulle v. Marin Ventures, Inc.,* 20 Cal.3d 512, 518–19, 573 P.2d 465, 468–69, 143 Cal.Rptr. 247, 250–51.

However, the defendants insist that a residential lease between a landlord and a tenant is a purely private affair, and not a matter of public interest. We disagree. We rejected this same argument in *Olson* and find persuasive the reasoning of the Washington Supreme Court, which, in response to the very same argument, stated:

> [W]e are not faced merely with the theoretical duty of construing a provision in an isolated contract specifically bargained for by *one landlord and one tenant* as a purely private affair. Considered realistically, we are asked to construe an exculpatory clause, the generalized use of which may have an impact upon thousands of potential tenants.

*McCutcheon v. United Homes Corp.,* 79 Wash.2d 443, 449–50, 486 P.2d 1093, 1097 (1971) (emphasis in original).

Based on the foregoing, we conclude that the exculpatory clause in the residential

---

**2.** Based upon 1990 Census of Population and Housing, Bureau of the Census, U.S. Department of Commerce, Washington, D.C.

lease in this case is contrary to public policy. In reaching this conclusion, we join a growing number of states. As stated previously, the legislature of this state has enacted the Uniform Residential Landlord and Tenant Act, albeit in only a few counties, which prohibits exculpatory provisions in residential leases. In addition, at least four states have limited by statute the freedom of contract concept as applied to exculpatory provisions in residential leases. *See* Ill.Ann.Stat. ch. 80, para. 91 (Smith–Hurd 1987); N.Y. General Obligations Law § 5–321 (McKinney 1989); Md. Real Property Code Ann. § 8–105 (1988); and Mass.Gen. Laws Ann. ch. 186, § 15 (West 1991). Moreover, at least eleven states and the District of Columbia by judicial decision have declared exculpatory lease clauses void as against public policy under the facts developed in those cases. *See Lloyd v. Service Corp. of Alabama*, 453 So.2d 735 (Ala.1984); *Henrioulle v. Marin Ventures, Inc.*, 20 Cal.3d 512, 573 P.2d 465, 143 Cal.Rptr. 247 (1978) (en banc); *Tenants Council of Tiber Island–Carrollsburg Square v. DeFranceaux*, 305 F.Supp. 560 (D.C.1969); *Old Town Development Co. v. Langford*, 349 N.E.2d 744 (Ind.App.1976); *Feldman v. Stein Building & Lumber*, 6 Mich.App. 180, 148 N.W.2d 544 (1967); *Cappaert v. Junker*, 413 So.2d 378 (Miss. 1982); *Papakalos v. Shaka*, 91 N.H. 265, 18 A.2d 377 (1941); *Kuzmiak v. Brookchester, Inc.*, 33 N.J.Super. 575, 111 A.2d 425 (1955); *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966); *Crowell v. Housing Authority of the City of Dallas*, 495 S.W.2d 887 (Texas 1973); *McCutcheon v. United Homes Corp., supra*, 79 Wash.2d 443, 486 P.2d 1093 (1971); *College Mobile Home Park & Sales, Inc. v. Hoffman*, 72 Wis.2d 514, 241 N.W.2d 174 (1976).

Finally, the defendants argue that declaring public policy in Tennessee is the province of the legislature. Since the legislature has specifically chosen to limit application of the Uniform Residential Landlord and Tenant Act, and its section prohibiting exculpatory provisions in residential leases, to the most populous counties, the defendants contend that the public policy in those counties not covered by the Act still favors freedom of contract. We disagree.

■ "The public policy of Tennessee 'is to be found in its constitution, statutes, judicial decisions and applicable rules of common law. *Home Beneficial Ass'n. v. White*, 180 Tenn. 585, 177 S.W.2d 545 (1944).'" *Smith v. Gore*, 728 S.W.2d 738, 747 (Tenn.1987) (quoting *State ex rel. Swann v. Pack*, 527 S.W.2d 99, 112 n. 17 (Tenn.1975), *cert. denied*, 424 U.S. 954, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976)). Primarily, it is for the legislature to determine the public policy of the state, *Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn.1978), and only in the absence of any declaration in the Constitution and statutes may public policy be determined from judicial decisions. *Cavender v. Hewitt*, 145 Tenn. 471, 475, 239 S.W. 767, 768 (1921). However, where there is no declaration in the Constitution or the statutes, and the area is governed by common law doctrines, it is the province of the courts to consider the public policy of the state as reflected in old, court-made rules. *Hanover v. Ruch*, 809 S.W.2d 893, 896 (Tenn.1991).

■ The rule that, subject to certain exceptions, parties are free to contract that one shall not be liable to the other for his negligence, as recognized by the Court of Appeals in *Schratter v. Development Enterprises, Inc., supra*, is a judicial declaration of public policy. *See Chazen v. Trailmobile Inc.*, 215 Tenn. 87, 384 S.W.2d 1 (1964). In addition, the exception to the freedom of contract rule for exculpatory clauses affecting the public interest is also a judicial declaration of public policy. *See Olson v. Molzen, supra*.

We conclude that in the residential landlord-tenant relationship, the public policy against exculpatory clauses affecting the public interest should control lease provisions limiting a landlord's liability to its tenants. Our conclusion is not changed by the fact that in 1975 the legislature limited the coverage of the Uniform Residential Landlord and Tenant Act to counties having a population of more than 200,000 according to the 1970 Census, or any subsequent federal census. On the contrary, we

**760**

note that the Act's language permits any county in the state to grow into the population classification and that the legislature, effective July 1, 1992, reduced the population classification to counties having a population of more than 68,000.

■ We observe that the Act broadly regulates the landlord-tenant relationship, covers much more than just exculpatory lease provisions, and declares public policy for counties which now fit in the population class and for those who "grow into it." Accordingly, we determine that the Act declares no public policy in the area of exculpatory clauses for the least populous counties of the state. Therefore, we conclude the limited application of the Act is not a declaration by the legislature that the public policy of Tennessee favors freedom of contract for residential leases in the counties not covered by the Act.

Accordingly, we hold that under the facts here, the lease clause limiting the residential landlord's liability for negligence to its tenants is void as against public policy. As a result, we expressly overrule the intermediate court decision in *Schratter v. Development Enterprises, Inc.*, 584 S.W.2d 459 (Tenn.App.1979), and any other prior decision, but only to the extent they conflict with this holding. As a result of our conclusion, we pretermit all other issues.

The Court of Appeals' judgment is reversed, and the cause is remanded to the trial court for proceedings consistent with this Opinion. The costs of this appeal are taxed to the defendants, Tobe McKenzie and McKenzie Development Corporation.

DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.

REID, C.J., dissents.

REID, Chief Justice, dissenting.

The majority correctly acknowledges that residential leases involve a business activity "generally thought suitable for public regulation" and, consequently, "the Legislature of this state has seen fit to regulate this area...." That body has duly considered the matter and has already embarked on an evolving legislative scheme defining the parameters of exculpatory provisions in the context of residential leases. *See* T.C.A. § 66–28–203. Since the legislature is the primary declarant of public policy, *see Hyde v. Hyde*, 562 S.W.2d 194, 196 (Tenn.1978), and is now involved in limiting the application of exculpatory provisions in residential leases, I would defer to the legislature's prerogative to continue to declare the public policy in this area of the law. Therefore, I respectfully dissent.