# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

December 10, 1998

Cecil W. Crowson
Appellate Court Clerk

JAMES HANCOCK and wife,  )
BRITT HANCOCK,  )
         )
    Plaintiffs/Appellants,  )
         )
         )
VS.  )
         )
         )
U-HAUL COMPANY OF TENNESSEE  )
d/b/a U-HAUL STORAGE FACILITY,  )
         )
    Defendant/Appellee.  )

Appeal No.
01-A-01-9801-CC-00001

Montgomery Circuit Civil
No. C11-225

APPEALED FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE JAMES E. WALTON, JUDGE

MART G. FENDLEY
107 North Third Street
P. O. Box 925
Clarksville, TN 37041-0925
    Attorney for Plaintiffs/Appellants

MICHAEL G. MCLAREN
STEPHEN C. BARTON
2900 One Commerce Square
40 S. Main Street
Memphis, Tennessee 38013
    Attorneys for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

The plaintiffs brought suit for the loss of their furniture and other property, which was stolen from the defendant's self-storage facility. The defendant contended that the contract between the parties relieved it of any liability for the plaintiffs' loss. The trial court granted summary judgment to the defendant. We affirm.

## I.

James Hancock and his wife Britt sold their home in Clarksville because they were planning to build a new house in Phoenix, Arizona. They needed to store their furniture and household goods until their new home was completed, so on July 7, 1995, Mr. Hancock went to a storage facility in Clarksville operated by defendant U-Haul of Tennessee, Inc.

Mr. Hancock noted with approval the strong physical security features at the facility, such as the nine or ten foot high chain link fence topped by serpentine or barbed wire, which surrounded the compound, and the good lighting. He spoke to Paul Browning, the manager of the facility, who told Mr. Hancock that he and his wife lived on the premises. Mr. Browning offered Mr. Hancock a contract, which included a highlighted section with the following provisions:

> **PROPERTY IS STORED AT OCCUPANT'S SOLE RISK**
> I understand that this self storage facility:
> 1. is a commercial business renting space, and is not a warehouseman;
> 2. is not responsible for loss to my property;
> 3. does not provide insurance on my property for me; and
> 4. requires that I provide for my own insurance coverage or be "self insured" (personally responsible for my own loss).

The same section included boxes for the customer to check, to indicate whether he was choosing to purchase insurance from his own agent; choosing to be self insured; or choosing to purchase the optional Safestor package, a limited form of insurance offered by U-Haul, with maximum coverage of $15,000, and premiums of $24 per month.

Mr. Hancock signed a lease for one storage room at $94.95 per month, and checked the box for purchasing insurance from his own agent. However he did not purchase any such insurance. He and his wife subsequently moved all their household goods into the storage room, and placed their own padlock on the unit.

Shortly thereafter, the Brownings went on vacation. The facility then came under the supervision of a manager who remained on the premises only during office hours (7:00 a.m. to 7:00 p.m. on most days). On August 10, 1995, Jim Habacker, an employee of the defendant, discovered that there was no lock on the plaintiff's storage unit. He placed a U-Haul padlock on the unit, but did not notify the owners. On August 18, 1995, the Hancocks returned to their unit to add a bed comforter they had purchased, and discovered that most of their property had been stolen.

From the quantity of the goods taken (allegedly over $50,000 worth), and the nature of the goods left behind, it appeared that the thieves had the time to bring a large truck into the facility (perhaps through the rear gate), to "pick through" the property of the Hancocks, and to fully load the truck. There were no indications of forced entry. Suspicion naturally fell upon some employees of U-Haul, but no charges were ever brought.

The Hancocks filed a complaint against U-Haul on December 4, 1995, alleging that its employees had either been negligent in their management of the

storage facility, or had participated in the theft. The plaintiffs filed an amended complaint on August 14, 1997 to add a claim for fraudulent or negligent misrepresentation under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq. The defendant answered the original complaint on March 1, 1996, and filed a Motion for Summary Judgment on August 7, 1997.

U-Haul contended that the exculpatory clause quoted above insulated it from any liability for the plaintiffs' loss. The defendant denied that it had made any representations at all to the plaintiffs as to its security arrangements, and made a specific denial that the Brownings had represented themselves as a 24 hour a day "security team" on the premises.

The defendant also argued that there was no proof that any of its own employees were involved in the theft, but contended that even if they had been, the company was not liable for the intentional conduct of employees acting outside the course and scope of their employment. The trial court agreed with the reasoning of the defendant, and granted the Motion for Summary Judgment on December 1, 1997. This appeal followed.

## II. The Consumer Protection Act

The Tennessee Consumer Protection Act offers protection against businesses that prey on the consuming public by the use of unfair or deceptive practices. A long list of such forbidden practices is found in Tenn. Code Ann. § 47-18-104. In general, these involve false or misleading representations designed to induce the consumer to deal with the business making those misrepresentations.

In the present case, there is no evidence that U-Haul or its employees made any verbal or written representations to the Hancocks as to the nature or quality

of the security measures it would employ to protect its customers' goods. Since Paul Browning told James Hancock that he and his wife lived on the premises of the storage facility, Mr. Hancock apparently assumed this meant that he would receive the benefit of 24 hour a day surveillance of the facility. But there was no such provision in the leasing contract, the Brownings did not state that this was being offered, and they did not promise that they would never take a vacation or otherwise temporarily leave the facility.

James Hancock testified in deposition that he had previously stored goods at a U-Haul facility in Mesa, Arizona, and had been impressed by the security arrangements there. He observed that the defendant's Clarksville facility was physically similar to the one in Arizona, and he concluded that it operated the same way. He argues that the existence of a formidable enclosure around the facility amounts to an actionable misrepresentation under the Consumer Protection Act, where it is not accompanied by stringent security measures to prevent entry by unauthorized individuals.

While the Consumer Protection Act can apply to non-verbal as well as oral or written representations, we believe it is stretching the point to contend that the nature of the enclosure around the U-Haul facility amounts to an explicit promise that any specific level of security will be maintained. We also do not believe that the existence of similar physical barriers at two different U-Haul locations creates a guarantee that the same security measures will be employed at both locations.

For example, the record indicates that there are at least two different modes of controlling public access to customer storage areas that U-Haul employs at its various locations. At some facilities, two locks are placed on each rented unit, one by U-Haul and one by the customer. The individual who wishes to have access to his own unit must first sign in at the office and leave a piece of I.D. before he is given the

key to U-Haul's lock. At the Clarksville facility and others, only the customer's lock is placed on his unit. Thus, an individual who is wandering around in such a facility without checking in at the office first is less likely to be challenged. The record shows that Mr. Hancock never discussed the security arrangements at the Clarksville facility with Mr. Browning or with any other employee of U-Haul prior to renting his unit.

The record further indicates that during the Brownings' absence, the defendant's employees patrolled the enclosure daily, and kept the front and rear gates locked after business hours. The appellants contend that the keys to U-Haul's locks were accessible to too many people, and that the lock to the rear gate was flimsy. The magnitude of the Hancock's loss makes it clear in hindsight that U-Haul's security arrangements were inadequate, but we agree with the trial court that the Hancocks failed to state a claim for a violation of the Consumer Protection Act's prohibition against fraudulent or negligent misrepresentations.

### III. The Exculpatory Clause

The courts of this state have determined that contracting parties may make agreements whereby one party can escape from liability for its own negligence, and shift the risk of loss to the non-negligent party. *Chazen v. Trailmobile Inc.*, 384 S.W.2d 1 (Tenn. 1964); *Empress Health and Beauty Spa, Inc. v. Turner,* 503 S.W.2d 188 (Tenn. 1973).

There are some exceptions to this general rule. Thus, a common carrier may not by contract exempt itself from liability for breach of a duty imposed on it for the benefit of the public. *See Parton v. Mark Pirtle Oldsmobile-Cadillac*, 730 S.W.2d 634 (Tenn. App. 1987). An individual can contract for freedom from liability for ordinary negligence, but liability for gross negligence cannot be contracted away. *Adams v. Roark*, 686 S.W.2d 73 (Tenn. 1985). A doctor or other licensed practitioner

cannot contract for immunity from the consequences of professional negligence. *Olsen v. Molzen*, 558 S.W.2d 429 (Tenn. 1977).

The Hancocks argue that the language in the storage contract was not specific enough to notify them that by signing the contract, they were giving up their right to hold U-Haul accountable for property losses caused by ordinary negligence. But we agree with the appellee that the contract was unambiguous, and that Mr. Hancock, a knowledgeable businessman who had managed several franchise operations during the course of his career, was bound by its provisions.

## IV. Public Policy

The Hancocks also urge us to state that exculpatory clauses in contracts such as the one before us violate Tennessee's public policy. However the legislature is primarily responsible for declaring the public policy of this state. The role of the courts is limited to interpreting the public policy that is evidenced by a constitutional, statutory, or regulatory provisions. *See Stein v. Davidson Hotel*, 945 S.W.2d 714 (Tenn. 1997). No such provisions are cited here.

Appellants rely upon the *Olsen* case, supra, and the case of *Crawford v. Buckner*, 839 S.W.2d 754 (Tenn. 1992), both of which found public policy reasons to bar enforcement of exculpatory clauses. In both cases, the court recited the following six conditions, which when present in the contract and bargaining posture of the parties, make enforcement of exculpatory clauses inappropriate. We believe it would be helpful to recite these conditions once again:

> (a.) It concerns a business of a type generally thought suitable for public regulation.
> (b.) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.
> (c.) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at

least for any member coming within certain established standards.

(d.) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

(e.) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

(f.) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

558 S.W.2d at 431.

The appellants in the present case argue that the legislature has indeed seen fit to regulate the self-storage industry; that such storage is a matter of practical necessity for some people; that U-Haul holds itself out as willing to perform its services to any member of the public seeking them; that U-Haul possesses a clear advantage in bargaining strength over individuals seeking its services; that the contract it offered was a contract of adhesion; and that the transaction in question placed their valuable property under U-Haul's control. Finally, appellants note that the *Olsen* and *Buckner* courts both stated that it was not necessary for all six factors to be present in any given transaction for that transaction to be deemed offensive.

U-Haul admits that it held itself out as willing to perform its services to any members of the public seeking them, but rebuts, at least in part, the appellants' arguments on the other five cited factors. The appellee points out that the state's regulation of the self-storage industry primarily involves the facility owner's enforcement of liens on abandoned property, and is not the sort of comprehensive regulation which shows a significant state interest in the industry; that the services provided by self-service facilities are far less important to the public than the practice of medicine (*Olsen v. Molzen*) or the safety of residential housing (*Crawford v. Buckner*); that U-Haul did not possess a decisive bargaining advantage, because the

Hancocks could easily have made alternate arrangements for storage of their furniture; that the lease in question did provide the customer with the opportunity (however limited) to pay additional fees for insurance against negligence; and that the Hancocks retained control over their property because they placed their own lock on the storage unit, and U-Haul did not have access to the key.

Applying the six factors to the present case does not produce a result that is completely clear-cut, but we are satisfied that U-Haul has made out the better case, particularly with regard to the important questions of state regulation, the existence of reasonable alternatives for the individual who is not satisfied with the terms presented to him, and the question of control over the appellants' property.

Further, we are reluctant to throw the protective mantle of a declaration of public policy over a subject that our legislature has not yet chosen to rule upon, especially in view of our previous opinions which upheld the validity of similar exculpatory clauses in self-storage contracts. *Merritt v. Nationwide Warehouse Co.*, 605 S.W.2d 250 (Tenn. App. 1980); *Pettit v. Poplar-Union Extended Mini-Storage*, App. No. 02A01-9402-CV-00022 (filed at Jackson, January 26, 1995). We therefore find the exculpatory clause at issue to be an enforceable one.

## V.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Montgomery County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JUDGE


_____
WILLIAM B. CAIN, JUDGE