**Capri D. CURTIS, Plaintiff—Appellant,**

v.

**RYDER TRS INC., Defendant— Appellee.**

No. 00–36010.
D.C. No. CV–98–01054–KI.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided July 30, 2002.

Before GOODWIN, T.G. NELSON and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

Plaintiff–Appellant Capri Curtis appeals the district court's· summary judgment against her in this diversity action. Curtis asserted a number of tort claims and sought damages for breach of the implied warranties of fitness and merchantability. Her claims arose out of her 1997 rental of a˙truck and tow dolly from Defendant– Appellee Ryder TRS, Inc. in Tennessee and a series of subsequent mechanical problems, including an accident caused by a brake failure, that occurred as she moved her family to Washington State in the rented truck. The district court dismissed the contract claims based on the disclaimer of warranties included in Curtis' contract with Ryder.[1] On appeal, Curtis argues under Tennessee law that the disclaimer was not sufficiently conspicuous, was a violation of public policy, and was not within the parties' "circle of assent." We agree with the district court that the disclaimer was "conspicuous" as defined by Tennessee law and the Uniform Commercial Code, and that there was no violation of public policy under Tennessee law. However, we hold that the disclaimer was outside the parties' "circle of assent" under Tennessee law, and we therefore reverse.

## I

■ Under Tennessee Code § 47–2A– 214(2), a lessor like Ryder may disclaim the implied warranties of merchantability and fitness for a particular purpose only if the disclaimer is "conspicuous."[2] A disclaimer is "conspicuous" when it is "so written that a reasonable person against whom it is to operate ought to have noticed it." Tenn.Code § 47–1–201(10). The Uniform Commercial Code's definition of "conspicuous," adopted by Tennessee, specifies that "[a] printed heading in capitals" and language "in larger or other contrasting type or color" is conspicuous. *Id.* Both of those enumerated stylistic qualities are present in Ryder's disclaimer, as the heading of the disclaimer section is in capitals and the disclaimer language is both bolded and underlined. Further, the case law suggests that a Tennessee court would find the disclaimer conspicuous within the statutory meaning, because it was located in the first paragraph of the Terms and Conditions, because the text of the contract urged a renter to "read carefully" those terms and conditions, and because the rental agreement required a signature (which Curtis provided) attesting that the terms have in fact been read. *See Contour Med. Tech., Inc. v. Flexcon Co.,* 1998 WL 242609, No. 01A01–9707–CH– 00315 (Tenn.Ct.App. May 6, 1998) (finding limitation of damages conspicuous despite its fine print and location in the middle of the text on the reverse side of the docu-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The court dismissed the tort claims as barred by the statute of limitations, a holding Curtis does not appeal.

2. Section 47–2A–214(2) also requires that a disclaimer be in writing and use particular language designed to highlight the nature of the disclaimed warranties. Curtis does not allege that these requirements were not met.

ment because a plain notice on the face of the invoice drew attention to the term); *One Stop Supply, Inc. v. Ransdell,* 1996 WL 187576, No. 01A–01–9509–CV–00403 (Tenn. Ct.App. April 19, 1996) (finding disclaimer conspicuous despite its location on the back of a form because it was above the signature line in all capital letters and the plaintiff had affixed his signature); *Moulton v. Ford Motor Co.,* 1973 WL 21361 (Tenn.Ct.App.1973) (holding disclaimer in automobile sales contract was conspicuous because it was on the face of the contract, in slightly bolder type near the top of the page and was set off by horizontal lines). Accordingly, the district court did not err in holding that the disclaimer was "conspicuous."

## II

█ Curtis contends that the Rental Information Folder violated public policy under Tennessee law because it contains a number of other exculpatory clauses and was offered on a "take-it-or-leave it" basis with no explanation to her. The contract clauses to which Curtis refers involved exculpation from liability in tort, and the case law on which Curtis hinges her invalidation argument deals with the public policy against the disclaiming of tort liability. *See Olson v. Molzen,* 558 S.W.2d 429 (Tenn.1977). However, the sole remaining claim on appeal is a contract claim. Even assuming a Tennessee court would apply its public policy doctrine in a case involving only contractual warranty disclaimers that contravene public policy, Tennessee law would not call for invalidation in this case. Tennessee's doctrine invalidating exculpatory provisions of one-sided contracts of adhesion imposed by a superior bargaining power applies to only a very narrow category of exculpatory provisions in areas with significant impact on the public interest. The *Olson* case on which Curtis relies dealt with a disclaimer signed as a condition of receiving an abortion. The court emphasized that it was making an exception to the "general rule" that "a party may contract against his or her own negligence" because that rule did "not afford a satisfactory solution in a case involving a professional person operating in an area of public interest and pursuing a profession subject to licensure by the state." 558 S.W.2d at 430. The factors set forth in *Olson* supporting invalidation all demonstrate that the doctrine does not extend to routine business transactions, but rather is limited to services of "great importance" and an "essential nature" in which the person or property of the purchaser is under the seller's control and subject to the seller's carelessness. *Id.* at 431. *See also Crawford v. Buckner,* 839 S.W.2d 754, 756 (Tenn.1992) (applying *Olson* to invalidate a clause depriving tenant of right to recover damages for harm caused by landlord's negligence); *Parton v. Mark Pirtle Oldsmobile,* 730 S.W.2d 634, 636 (Tenn.Ct. App.1987) ("While it is arguable that the principle announced in [*Olson*] could be applied to the case at bar, we do not think the Supreme Court intended the rule to be applied to transactions by what the Court termed 'tradesmen in the marketplace.'"). We therefore decline to hold the contract invalid as contrary to public policy.

## III

█ We nonetheless hold that reversal is warranted in this case because we are convinced that a Tennessee court would agree with Curtis that the disclaimer was ineffective under Tennessee's "circle of assent" doctrine. That doctrine, which governs cases of contracts with boilerplate clauses like the one at issue here, dictates that the parties can be said to have "assented" only to the few dickered terms and to "any not unreasonable or indecent terms the seller may have on his form,

which do not alter or eviscerate the reasonable meaning of the dickered terms." *Parton,* 730 S.W.2d at 636. "[T]he parties may reallocate the risks of their bargain and such a reallocation will be judicially sanctioned *if there is both apparent and genuine assent to it." Id.* (emphasis in original). This assent will be found only if (1) the reallocation is physically conspicuous; (2) it was "manifested in a fashion comprehensible to the party against whom it is sought to be enforced"; and (3) that party "had a reasonable choice in relation to such reallocation." *Id.* at 637 (quoting J. Murray, *On Contracts* § 353 2d Revised Ed. (1974)). A party like Curtis who signs a boilerplate contract furnished by the lessor "will be bound by the provisions in the form over which the parties actually bargained and such other provisions that are not unreasonable in view of the circumstances surrounding the transaction." *Id.* at 637–38. "Circle of assent" in Tennessee is therefore a totality of the circumstances inquiry.

Ryder asserts that Curtis' signature on the Rental Agreement beneath a preprinted recital that she had read the Rental Information Folder demonstrates her assent to the disclaimer within that folder. However, this assertion fails to consider the totality of the circumstances surrounding that signature. The Rental Information Folder was a separate document that the rental agent knew Curtis had not read. The rental agent took no' action to point out the disclaimer to her. *See id.* at 638; *One Stop Supply,* 1996 WL 187576 at *3 (noting the importance, for circle of assent analysis, of whether the party had the opportunity "to peruse the [contract] at his leisure before signing it" and of the absence of "evidence that the offending clause was ever pointed out to him"); *Taylor v. Liberty Mutual Insurance Co.,* 1994 WL 24311, No. 01–A–01–9210–CV00420 at *4 (Tenn.Ct.App. Jan. 26, 1994) (noting, in

analyzing the parties' "circle of assent," that an insurance company "did not point out or explain the significance" of a release from liability when it tendered the document to the accident victim). Significantly, on the Rental Agreement that Curtis signed, immediately above the signature line, Ryder highlighted a number of paragraphs from the Rental Information Folder, identifying them by paragraph number. We therefore know that Ryder knew how to draw attention to clauses within the folder when it was important for its own purposes to do so. The disclaimer paragraph was not among the highlighted paragraphs.

The disclaimer paragraph is printed in small (seven-point) type within a folder that begins with reassuring statements, in large type, such as "Let Ryder Take a Load Off Your Mind" and "One way we can thank you for choosing Ryder is to make your move as easy as possible." The disclaimer paragraph is headed "Vehicle Condition," rather than "Disclaimer of Warranty," and the first sentence of the disclaimer reads, "I inspected the Vehicle and it is in good and usable condition and fit for My rental purposes." *See Parton,* 730 S.W.2d at 638 (finding clause outside the "circle of assent" because the heading above the provision read "TERMS CASH: UNLESS OTHER ARRANGEMENTS MADE," not suggesting that the small print dealt with disclaimer of warranty).

"It is clear that in light of all the circumstances surrounding [Curtis' contract with Ryder]" the "boilerplate, standard-form reallocation of material risks was never part of the 'circle of assent' of the transaction." *Board of Directors of the City of Harriman School District v. Southwestern Petroleum Corp.,* 757 S.W.2d 669, 675 (Tenn.Ct.App.1988). We believe a Tennessee court would find that the disclaimer provision, which plainly was not a dickered

term, was not "manifested in a fashion comprehensible to [Curtis]," and that she was not provided "a reasonable choice in relation to such reallocation." *Parton*, 730 S.W.2d at 637. Because the disclaimer was not within the parties' "circle of assent," it was not effective under Tennessee law.

REVERSED and REMANDED.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.