GUY FLOYD,                              )
                                        )
        Plaintiff/Appellant,            )       Appeal No.
                                        )       01-A-01-9807-CV-00399
v.                                      )
                                        )       Davidson Circuit
CLUB SYSTEMS OF                         )       No. 96C-277
TENNESSEE, INC., d/b/a                  )
THE CLUB AT GREEN HILLS,                )
                                        )
        Defendants/Appellees.           )

FILED

July 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY,

AT NASHVILLE, TENNESSEE


THE HONORABLE HAMILTON V. GAYDEN, JR., JUDGE




PHILIP N. ELBERT
DONNA L. DeLONG
Neal & Harwell
2000 First Union Tower
150 Fourth Avenue North
Nashville, Tennessee  37219-2498
        ATTORNEYS FOR PLAINTIFF/APPELLANT



WALTER W. BUSSART
Bussart & Medley
520 North Ellington Parkway
P. O. Box 2456
Lewisburg, Tennessee  37091-1456
        ATTONEY FOR DEFENDANT/APPELLEE




AFFIRMED AND REMANDED




WILLIAM B. CAIN, JUDGE

# O P I N I O N

This action arises out of personal injuries sustained by the plaintiff while using the weight equipment at the defendant health club. The plaintiff brought suit claiming that the defendant was negligent in its failure to properly inspect, repair and maintain its weight equipment. In addition, the plaintiff alleged that the defendant had willfully, wantonly, recklessly and intentionally removed the safety devices from the equipment at issue. The defendant health club moved for summary judgment on the basis that the plaintiff had signed an exculpatory clause by which he expressly assumed the risk of negligence. The plaintiff opposed summary judgment arguing that this exculpatory clause violated public policy. The trial court granted summary judgment finding first that the exculpatory clause was valid and second that there was no evidence to support the plaintiff's allegation that the defendant had engaged in willful, wanton and reckless behavior. On appeal, we affirm the decision of the trial court in all respects.

## I. FACTS

Guy Floyd became a member of The Club at Green Hills ("The Club") on February 1, 1990, at which time he signed a two-year contract. He then renewed his membership on February 4, 1992, for two years. He continued his membership for a third time on July 1, 1994. On all three occasions, Mr. Floyd signed The Club's standard form membership contract ("the Membership Contract") which contained an exculpatory clause which discharged The Club from liability to its members for injuries caused by The Club's negligence. While this exculpatory language is nearly identical in all three contracts, the third contract, which was in effect at the time of Mr. Floyd's injury, specifically provides as follows:

> MEMBER REPRESENTS HE/SHE AND ALL AUTHORIZED INDIVIDUALS LISTED ARE IN GOOD PHYSICAL CONDITION AND ARE ABLE TO USE THE EQUIPMENT PROVIDED AND TAKE THE EXERCISES RECOMMENDED BY "THE CLUB." MEMBER FULLY UNDERSTANDS AND AGREES THAT IN PARTICIPATING IN ONE OR MORE OF THE PROGRAMS OR USING THE EQUIPMENT AND/OR FACILITIES MAINTAINED BY "THE CLUB," THERE IS THE

2

POSSIBILITY OF ACCIDENTAL OR OTHER PHYSICAL INJURY. MEMBER ASSUMES THE FULL RISK OF HIS/HER AND ANY AUTHORIZED INDIVIDUAL'S USE OF "THE CLUB" FACILITIES AND SERVICES AND FOREVER RELEASES "THE CLUB," ITS OFFICERS, ITS AGENTS AND EMPLOYEES, FROM ALL LIABILITY, INCLUDING ALL ACTS OF ACTIVE OR PASSIVE NEGLIGENCE.

In Mr. Floyd's deposition testimony, he testified that he only read the financial portions of the contracts when he signed them. When asked why he did not read the entire contract, Mr. Floyd responded, "I don't know. I didn't think about it." He also testified that no one read the contract to him.

Mr. Floyd seeks to recover for personal injuries that he sustained while exercising at The Club on January 25, 1995. In his deposition testimony, Mr. Floyd described the accident stating that he was using weight equipment to perform calf raises. He stood on a six-inch high wooden box while holding weights and a barbell totaling ninety-five pounds on his shoulders. After a few repetitions, the wooden box flipped up, hit Mr. Floyd in the shins and caused him to fall face first with his upper chest and throat striking the wooden box. The barbell fell onto Mr. Floyd's back and shoulders pinning him to the wooden box. In addition, Mr. Floyd's head struck a 100 pound free weight which was lying on the floor.

Mr. Floyd's complaint is with the instability of the box, the presence of the free weight on the floor, and the absence of safety stops from the weight equipment. It is Mr. Floyd's position that the barbell would not have fallen on top of him if the weight equipment had been outfitted with safety stops. Mr. Floyd claimed in his deposition that he overheard another member at The Club say that The Club had removed the safety stops from the equipment and had never replaced them. However, Mr. Floyd did not present any proof that the safety stops had been removed by The Club personnel. To the contrary, The Club submitted an affidavit of its general manager and co-owner which asserted that neither this man "nor any other agent, servant or employee of [The Club] has ever removed or permitted to be removed any stops or safety devices on the weight machine which is the subject of this litigation."

3

After Mr. Floyd filed his complaint, The Club moved for summary judgment primarily on the basis that the assumption of risk/release of liability clause in Mr. Floyd's Membership Contract prohibited recovery. The trial court first issued a memorandum opinion in which it found that the health club industry is not one in which exculpatory clauses for ordinary acts of negligence are void as against public policy. In its memorandum, the court reserved ruling on the issue of whether The Club could be liable for gross and/or willful negligence such that Mr. Floyd's cause of action would not be barred by the exculpatory clause defense. In so doing, the court gave Mr. Floyd sixty days to present proof to support this "currently naked allegation." However, when Mr. Floyd did not offer any further evidence, the court ordered that summary judgment be entered against him and that this cause be dismissed as against The Club. We affirm the trial court in its summary judgment decision.

## II. Issues

It has long been the rule in Tennessee that, subject to certain exceptions,[1] parties to a contract may agree that one shall not be liable for his or her negligence to the other. *Crawford v. Buckner*, 839 S.W.2d 754, 756 (Tenn. 1992); *Olson v. Molzen*, 558 S.W.2d 429, 430 (Tenn. 1977); *Moss v. Fortune*, 207 Tenn. 426, 429, 340 S.W.2d 902, 903-04 (1960). One of the exceptions to this general rule favoring the freedom to contract involves the situation where a professional person operating in an area of public interest and pursuing a profession subject to licensure by the state attempts to contract against his own negligence. *Olson*, 558 S.W.2d at 430. Holding that an exculpatory contract signed by a patient as a condition of receiving medical treatment is contrary to public policy, the court in *Olson* adopted the following six factor test to determine when it is in the public's interest that parties not be permitted to enter such exculpatory contracts:

---

[1] An exception to the rule that a party can agree to assume the risk of harm arising from another party's negligent conduct arises in the situation of willful or gross negligence. *See Perez v. McConkey*, 872 S.W.2d 897, 904 (Tenn. 1994). The existence of "willful or gross negligence" was an issue below and the trial court concluded that the plaintiff had not put on any proof of such intentional negligence. This issue was not raised by Mr. Floyd in his appeal and is not therefore addressed as an issue in this opinion.

(a.) It concerns a business of a type generally thought suitable for public regulation.

(b.) The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

(c.) The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

(d.) As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

(e.) In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

(f.) Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Id.* at 431 (citing *Tunkl v. Regents of Univ.*, 383 P.2d 441, 445-46 (Cal. 1963)); *see also Crawford*, 839 S.W.2d at 757 (adopting again for the court the six-factor test in a case involving an exculpatory clause in a residential lease).

In the instant case, Mr. Floyd insists that the *Olson* criteria, when applied to the facts in this case, mandate that the exculpatory clause that he signed be invalidated. However, this court held in *Petry v. Cosmopolitan Spa International, Inc.*, 641 S.W.2d 202 (Tenn. App. 1982), that an exculpatory clause of almost the exact type and language as the one in the case at bar was valid and enforceable. As in this case, *Petry* involved a lawsuit against a health club for the alleged negligent maintenance of an exercise machine. *Petry, Id.* at 203. Significantly, in *Petry*, the court disagreed that the policy considerations established in *Olson* applied to these facts. The court stated that "[h]ealth spas are not businesses 'of a type generally thought suitable for public regulation.'" *Id.*

Furthermore, the court in *Petry* placed great emphasis on another factually and legally similar case, *Empress Health & Beauty Spa, Inc. v Turner*, 503 S.W.2d 188 (Tenn. 1973). In *Empress,* the supreme court upheld an exculpatory clause as a defense to the plaintiff's suit that the defendant health club had "carelessly and negligently maintained" an exercise machine. Citing general

"freedom of contract" law, the court reasoned that the exculpatory clause was unambiguous and thus a valid and complete bar to the plaintiff's recovery. *Id.* at 191. Significantly, the court in *Olson* cited *Empress* as an example of Tennessee's public policy favoring freedom to contract. *Olson*, 558 S.W.2d at 430.

The law is clear and unambiguous that the exculpatory clause in this health club contract is valid and enforceable. *Petry* is directly on point and controls the outcome of the instant case. Importantly, *Petry* was decided after *Olson* and the court in *Petry* specifically found that the *Olson* factors did not apply to health club contracts. We are unconvinced by Mr. Floyd's argument that *Petry's* reasoning is no longer valid in light of the enactment of Tennessee Code Annotated sections 47-18-301 to 47-18-320 relating to health clubs. This statute was enacted as part of the Consumer Protection Act with a purpose to protect consumers. *See* Tenn. Code Ann. § 47-18-102 (1995). From the content, it is clear that this legislation was enacted to make health clubs financially responsible to their members with whom they enter contracts. This statute does not in any way address the conduct of health clubs and their staff with regard to the safety of the premises and equipment at the clubs, and thus it does not signify that the legislature was concerned with the physical safety of health club users. We therefore conclude that the statute does not constitute the type of public regulation contemplated by *Olson*.

Finally, we address Mr. Floyd's contention that his contract with The Club did not comply with the requirements for a valid health club agreement under section 47-18-305 of the code and thus the entire contract, including the exculpatory clause, is unenforceable against him pursuant to section 47-18-303(3). Section 47-18-303 provides in pertinent part as follows:

> A health club agreement shall be unenforceable against the buyer, and the buyer shall be entitled to a refund less that portion of the total price which represents actual use of the facilities and less the cost of goods and services consumed by the buyer if: . . .
> (3) The agreement fails to conform with the provisions of this part.

The code provides that health club contracts must include certain statements, for example, a notification that the buyer has a right to cancel and a warning that

payment in full may mean paying for future services and may entail a loss of money should the health club cease to do business. Tenn. Code Ann. § 47-18-305(4), (5)(A) (Supp. 1998). Mr. Floyd points out several places in the contract where these and other statutorily-required statements contain minor alterations from the versions set out in the statute.

Initially, we note that none of these provisions have anything to do with the safety of the premises or equipment at The Club. However, even if, as Mr. Floyd argues, statutory non-compliance rendered this contract void, there is no non-compliance here. We find that the substance of the statutory requirements is embodied in this contract and that any minor distinction does not materially alter the meaning of the phrases to a reasonable reader. We therefore hold that this agreement does not "fail to conform" to the provisions of the code as contemplated by section 47-18-303.

### III.  Conclusion

The exculpatory clause in the contract between Mr. Floyd and The Club is a valid and complete bar to Mr. Floyd's negligence cause of action as a matter of law. Moreover, Mr. Floyd cannot escape the effect of this clause due to the contract's failure to incorporate certain statutorily-required language in an exact and verbatim manner. We therefore hold that the trial court was correct in its grant of summary judgment to The Club. While we reject The Club's assertion that this appeal is frivolous, we do order that the costs of this action be assessed against Mr. Floyd.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

7

_____
PATRICIA J. COTTRELL, JUDGE