IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 3, 2003 Session

## ROYDEN RUSSELL AND JUDY RUSSELL v. MALVIN L. BRAY AND DIEDRE BRAY, AND JOE JOHNSON d/b/a CENTURY 21 ABLE REALTY AND AUCTION, AND JOHN DOE d/b/a RE/MAX HOMEFINDER REALTY, AND RANDALL L. DOUTHAT AND HOLLY DOUTHAT d/b/a THE HOMETEAM INSPECTION SERVICE

**Appeal from the Law Court for Sullivan County**
**No. C33968(M)     John S. McLellan, III, Judge**
**FILED APRIL 4, 2003**

**No. E2002-02153-COA-R9-CV**

Royden Russell and Judy Russell ("Plaintiffs") entered into a contract with Malvin L. Bray and Diedre Bray ("Sellers") to purchase a house. The sales contract required Plaintiffs to obtain an inspection by a professional home inspector. Plaintiffs hired Randall L. Douthat and Holly Douthat d/b/a The HomeTeam Inspection Service ("Defendants") to perform the home inspection. Royden Russell signed a form contract ("Contract") presented by Defendants. The Contract contained an exculpatory clause limiting Defendants' liability to the lesser of the cost of repair or the amount of the inspection fee. After moving into the house, Plaintiffs discovered structural problems. Plaintiffs sued Sellers, the realtors involved in the sale of the house, and Defendants. Plaintiffs filed a motion for partial summary judgment concerning the exculpatory clause contained in the Contract. Defendants responded by filing a Renewed Motion for Summary Judgment concerning, in part, the exculpatory clause. The Trial Court held the exculpatory clause was not against public policy and was enforceable. The Trial Court also granted Plaintiffs permission to file an interlocutory appeal. Plaintiffs applied to this Court and were granted an interlocutory appeal on the limited issue of whether the Trial Court erred in holding the exculpatory clause was not against public policy. We reverse.

**Interlocutory Appeal Pursuant to Rule 9, Tenn. R. App. P.;**
**Judgment of the Law Court Reversed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Dave B. Jordan, Kingsport, Tennessee, and Daniel R. Bieger, Abingdon, Virginia, for the Appellants, Royden Russell and Judy Russell.

Jack M. Vaughn, Kingsport, Tennessee, for the Appellees, Randall Douthat and Holly Douthat d/b/a The HomeTeam Inspection Service.

# OPINION

## Background

In February of 2000, Plaintiffs entered into a sales contract to purchase a house from Sellers. The sales contract was contingent upon "all electrical systems, plumbing systems, septic system, heating and cooling systems and appliances being in good working order at time of closing, to be inspected prior to closing, said inspection to be at the [Plaintiff's] expense, except for septic inspection paid by Seller." In addition, the sales contract required "[Plaintiffs] to have Home Inspection within 72 hours after price is agreed upon" and further required Plaintiffs "to be excepting [sic] of findings by Home Inspection." An addendum to the sales contract required "[Plaintiffs] to pay 1st $1,000 toward repairs as a result of home inspection to be completed by a bona-fide professional home inspector." The addendum also required a copy of the home inspection report be provided to Sellers.

Plaintiffs obtained brochures for two professional home inspection services from their realtor.[1] One of these brochures was The HomeTeam Inspection Service brochure ("Brochure"). The Brochure states a HomeTeam inspection includes an inspection of such items as foundations, roofs, gutters, exterior walls, doors, windows, insulation, plumbing and fixtures, heating and cooling systems, and electric fixtures, among others. The Brochure also offers services such as pest inspections, radon testing, lead testing, asbestos testing, pool inspection, and well/septic testing and assures that a team of inspectors will be assigned to each inspection to assure a "fast, efficient and thorough examination." In addition, the Brochure assures that the HomeTeam inspectors are not contractors and do not benefit from the sale or repair of any house.

Royden Russell contacted Defendants and the other home inspection service. He attempted to set up an appointment with the other home inspector, but a scheduling conflict arose. Plaintiffs then scheduled an appointment to have Defendants inspect the house. Royden Russell met Defendants at the house at the time set for inspection. Defendants then presented the Contract, a form contract, to Royden Russell for his signature. Mr. Russell signed the Contract. Defendants performed the home inspection.

The Contract contained an exculpatory clause that states: "BY SIGNING THIS AGREEMENT, CLIENT EXPRESSLY AGREES THAT ANY LIABILITY OF HOMETEAM, ITS EMPLOYEES, AGENTS, OFFICERS, AND DIRECTORS, SHALL BE LIMITED TO THE LESSER OF THE COST TO REPAIR (adjusted for the remaining life of the problem item) OR THE AMOUNT OF THE INSPECTION FEE PAID BY CLIENT." The contract provided for an inspection fee of $225. Plaintiffs used a coupon they obtained from their realtor for $25 off of a HomeTeam inspection.

---

[1] The factual situation of this case is more involved than we discuss in this Opinion. This appeal deals only with the Contract, and, therefore, we do not discuss the facts not directly relevant to this appeal.

Royden Russell testified at his deposition that during the inspection, he asked Defendants to look at some cracks in the basement floor. Randall L. Douthat testified at his deposition that toward the end of the inspection, Royden Russell expressed concern regarding crooked door jambs in the interior of the home and asked if the doors were simply out of level or if this was an indication of a structural defect. Randall L. Douthat measured two doors and then went downstairs to check visually for any problems. Randall L. Douthat then informed Royden Russell that the problem with the door jambs appeared to be cosmetic.

Defendants provided Plaintiffs with a written report of their findings. Included in the report were findings stating appliances such as the electric built-in oven and counter top range, the range hood, the refrigerator, the dishwasher, and the trash compactor were inspected and appeared to be functional. The report also stated no major visible defects were observed in the visible portions of the foundation, the floor structure, the windows or doors, and the attic or roof structure.

The sale of the house proceeded and closing occurred in March of 2000. After Plaintiffs moved into the house, they discovered problems including floors settling creating a slope, doors out of square, and doors and windows that will not open or close. Plaintiffs hired several people to give opinions regarding the problems, including a structural engineer who concluded the "foundations had experienced excessive settlement." Plaintiffs also had an appraisal done and the appraisal states "[t]here appears to be severe structural damage. . . . cost could exceed what would be economically feasible to correct. . . . cost could have a negative impact on the subject value."

Plaintiffs sued the Sellers, the realtors involved in the sale of the home, and Defendants. Plaintiffs subsequently filed a motion for partial summary judgment asking the Trial Court to hold the exculpatory clause in the Contract invalid and unenforceable. In response, Defendants filed a Renewed Motion for Summary Judgment asking, in part, the Trial Court to hold that the exculpatory clause was valid and enforceable and Defendants could "buy their peace" by refunding the $225 inspection fee to Plaintiffs. The Trial Court heard argument on the motion for partial summary judgment and entered an order on August 28, 2002, holding, *inter alia*, the exculpatory clause in the Contract was not against public policy and should be enforced. The August 28th order also granted Plaintiffs permission to file an interlocutory appeal. Plaintiffs applied to this Court for an interlocutory appeal. We granted the appeal to hear the limited issue of whether the Trial Court erred in holding the exculpatory clause was not against public policy. Proceedings in the Trial Court were stayed pending the resolution of this appeal.

**Discussion**

This appeal was granted to consider only the limited issue of whether the Trial Court erred in holding the exculpatory clause contained in the Contract was not against public policy and should be enforced. Plaintiffs have attempted to raise another issue in their brief, which we will not consider in this interlocutory appeal.

As our Supreme Court has instructed:

-3-

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South,* 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn. 1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn. 1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Robinson v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn. 1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88-89 (Tenn. 2000) (footnote omitted).

As a general rule, "Tennessee courts have long recognized that, subject to certain exceptions, parties may contract that one shall not be liable for his negligence to another." *Crawford*

*v. Buckner*, 839 S.W.2d 754, 756 (Tenn. 1992). *See also, e.g., Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn. 1973) (upholding exculpatory clause in health club contract); *Moss v. Fortune*, 340 S.W.2d 902, 902 (Tenn. 1960) (upholding exculpatory clause in contract to hire horse). However, our Supreme Court also has held that an exculpatory clause in a contract is unenforceable when it affects the public interest. *E.g., Crawford*, 839 S.W.2d at 760 (finding an exculpatory clause in a residential lease contract to be contrary to public policy); *Olson v. Molzen*, 558 S.W.2d 429, 432 (Tenn. 1977) (holding an exculpatory clause in a contract for medical treatment is contrary to public policy). In determining whether an exculpatory clause affects the public interest, courts are to use six criteria as outlined by our Supreme Court as follows:

> [a.] It concerns a business of a type generally thought suitable for public regulation.
>
> [b.] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.
>
> [c.] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.
>
> [d.] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.
>
> [e.] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.
>
> [f.] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Olson*, 558 S.W.2d at 431. It is not necessary for all six criteria to be present, but "generally a transaction that has some of these characteristics would be offensive." *Id.* Application of the *Olson* criteria should be limited to situations involving a contract with a professional person, rather than a tradesman. *Id.* at 430; *Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc.*, 730 S.W.2d 634, 636 (Tenn. Ct. App. 1987) (stating "we do not think the Supreme Court intended the [*Olson*] rule to be applied to transactions by what the Court termed 'tradesmen in the market place.'").

Defendants argue they are "tradesmen in the market place," not professional persons, and, therefore, are not subject to the *Olson* public policy exception to the enforceability of exculpatory clauses. The case upon which Defendants rely, *Parton v. Mark Pirtle Oldsmobile-*

*Cadillac-Isuzu*, found that an automobile repair shop fell into the category of tradesmen, not professional persons. *Parton*, 730 S.W.2d at 636. However, Defendants have suggested no reason why they should be likened to automobile mechanics. Nor have Defendants presented any other compelling argument showing why they should be considered to be tradesmen and not professional persons. Unlike automobile mechanics or other tradesmen, Defendants are not performing hands-on tasks to create or repair a product. Rather, Defendants, like many professionals, sell their expert analysis and opinion. Further, Defendants not only acknowledge this status as professionals but rely upon it to sell their services by referring in the Brochure to the "trained professionals" that will provide the inspection. Therefore, we hold Defendants are professional persons and are subject to the *Olson* public policy exception to the enforcement of exculpation clauses.

Applying the first of the six criteria, we find the business of home inspection is of a type generally thought suitable for public regulation. We note Tennessee does regulate inspectors of new residential buildings, requiring the inspector to hold a contractor's license or a proper certification or membership. Tenn. Code Ann. §§ 62-6-301 and 62-6-302 (2002). Although inspectors of existing residential buildings are not specifically regulated, the fact that Tennessee regulates some inspectors of residential buildings indicates Defendants' business is the type of business that is generally thought *suitable* for public regulation. While not controlling, we also note that Randall Douthat testified in his deposition that Tennessee requires inspectors to be either a general contractor or to hold a specific membership, and that he holds a contractor's license. Thus, Randall Douthat appears to believe he is regulated by the State of Tennessee and required to fit into the statutory criteria in order to perform home inspections.

We also find the second criteria to be applicable in this case. Defendants are engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. As reflected in Defendants' Brochure, the purchase of a home is generally one of the largest and most important investments a person ever will make. Defendants' Brochure recognizes the importance of this investment stating:

> Both financially and emotionally, your new home is one of the biggest investments you'll ever make. You will enjoy many years of happiness - if you have chosen wisely. At first glance, it may appear to be in great shape. But it may contain a defect that you should be aware of. Certain problems you could live with, but others could be financially devastating. In making a decision of this magnitude, make it with confidence. Have your new home inspected before you close.

Our legislature also has recognized that inspections of residential property are of great importance to the public. *See* Tenn. Code Ann. § 66-5-201 (2002) (stating the statutorily required disclosure statement "is not a warranty of any kind by a seller and is not a substitute for inspections either by the individual purchasers or by a professional home inspector."); Tenn. Code Ann. § 66-5-202(1) (2002) (stating "[t]he disclosure form shall contain a notice to prospective purchasers and owners that [they] . . . may wish to obtain professional advice or inspections of the property."); Tenn. Code Ann. § 66-5-210 (2002) (providing that the required disclosure contain a statement indicating "[t]his

is not a warranty, or a substitute for any professional inspections or warranties that the purchasers may wish to obtain.").

The fact that home inspections are often a matter of practical necessity for some members of the public is evidenced by the list of services found in Defendants' Brochure. The Brochure states a HomeTeam inspection includes inspection of such things as foundations, roofs, gutters, insulation, plumbing and fixtures, heating and cooling systems, and electric fixtures, to name just a few. In addition, the Brochure offers services such as pest inspection, radon testing, lead testing, asbestos testing, and well/septic testing. Defendants' Brochure also promises a team of inspectors will be assigned to the job to assure a thorough examination. As reflected by the theme running throughout Defendants' Brochure, few, if any, members of the public have the knowledge and training to perform an inspection of the items listed in the Brochure. Hiring professional inspectors is a matter of practical necessity for some, and probably most, members of the public.

We also find the third of the criteria is satisfied in this case. The HomeTeam Inspection Service is a franchise in the business of conducting home inspections that distributes its brochures to the public. Defendants' Brochure is uncontested evidence that Defendants hold themselves out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

While the fourth and fifth criteria may have been present in the case at hand, the record is devoid of any evidence that would allow us to find these criteria are satisfied. Although there is evidence Plaintiffs were given the name of another home inspection service, and attempted to set up an appointment with this other inspector, there is no evidence showing whether the other inspector would have produced a contract with the same exculpatory clause. As we are unable to determine from the record whether Plaintiffs could have used another inspector without being required to sign a contract containing a similar exculpatory clause, we do not find Defendants possessed a decisive advantage of bargaining strength against any member of the public who sought their services. The record is also devoid of any evidence showing whether Plaintiffs could have bargained away the exculpatory clause and still have obtained the same inspection services, even at a higher price. The evidence does show the Contract was a form contract prepared by HomeTeam and presented to Plaintiffs. However, there is no evidence in the record showing whether Plaintiffs could have paid an additional reasonable fee to obtain protection against Defendants' negligence. Based upon the record before us, we find the fourth and fifth criteria are not satisfied in this case.

We do, however, find the sixth of the criteria is satisfied. The sales contract between Plaintiffs and Sellers was conditioned upon "all electrical systems, plumbing systems, septic system, heating and cooling systems and appliances being in good working order at time of closing, to be inspected prior to closing, said inspection to be at the [Plaintiffs'] expense, except for septic inspection paid by Seller." The contract also states Plaintiffs were required "to be excepting [sic] of findings by Home Inspection." In addition, the addendum to the sales contract states "[Plaintiffs] to pay 1st $1,000 toward repairs as a result of home inspection to be completed by a bona-fide professional home inspector." Thus, the sales contract provided that some findings by the home

inspector could be a deal breaker, and that Plaintiffs were required to accept whatever findings the home inspector made. Defendants' Brochure states an inspection includes all of the items upon which the sales contract was conditioned, except for appliances. However, the HomeTeam inspection report did specifically include information showing the major appliances, including the electric built-in oven and counter top range, the range hood, the refrigerator, the dishwasher, and the trash compactor, were inspected to determine if they were functional. Thus, Plaintiffs' property, in this case their contractual right to inspect the house, was under the control of Defendants and subject to the risk of carelessness by Defendants.

We find at least four of the six *Olson* criteria are applicable in this case. Based upon our analysis of the public interest exception, and applying all summary judgment standards, we hold that the exculpatory clause in the contract between Plaintiffs and Defendants is contrary to public policy and, thus, unenforceable. Accordingly, we reverse the Trial Court's holding that the exculpatory clause contained in the contract between Plaintiffs and Defendants is not against public policy and is enforceable.

### Conclusion

The judgment of the Trial Court is reversed, and Plaintiffs are granted a partial summary judgment that the exculpatory clause contained in the Contract is against public policy and will not be enforced. This cause is remanded to the Trial Court for such further proceedings as required consistent with this Opinion. The costs on appeal are assessed against the Appellees, Randall Douthat and Holly Douthat d/b/a The HomeTeam Inspection Service.

_____
D. MICHAEL SWINEY, JUDGE

-8-