Cindi CAREY, et al.

v.

Donald L. MERRITT d/b/a Merritt Residential and Commercial Inspections.

Court of Appeals of Tennessee, at Jackson.

Nov. 17, 2003 Session.

March 18, 2004.

Application for Permission to Appeal Denied by Supreme Court Oct. 11, 2004.

Gregory C. Morton, Memphis, TN, for Appellants.

Richard Glassman, Tameka Turner-Perry, Memphis, TN, for Appellee.

**OPINION**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

This case involves a suit for the negligent inspection of a home performed by the Defendant. The Plaintiffs signed an exculpatory clause, which released Defendant from any liability. The trial court below granted the Defendant's motion for summary judgment and the Plaintiffs appeal. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

### Facts and Procedural History

On July 29, 2001, Dennie and Cindi Carey (collectively the "Careys" or "Plaintiffs") entered a contract to purchase the home of the co-Defendants, John and Catherine Harman (collectively the "Harmans"), in Shelby County, Tennessee. The contract for sale provided that the Careys could hire a home inspector to examine various aspects of the home, including the plumbing, heating, air conditioning, electrical wiring, and the roof. The report of the inspector was to determine what, if any, repairs the Harmans needed to perform to place the house in good repair before the Careys took possession of the property. The Careys hired Donald Merritt ("Merritt" or "Defendant") to conduct the inspection, which Merritt completed in August 2001, examining the roof, attic, heating/cooling system, plumbing, electrical system, and other miscellaneous items.

Before Merritt would release his inspection report of the home, he required the Careys to sign a document entitled Exclusions and Limitations of this Inspection and Report. This document provides, in pertinent part: "[t]his company assumes no liability and shall not be liable for any mistakes, omissions, or errors in judgement [sic] of an employee beyond the cost of the report. This limitation of liability shall include and apply to all consequential damages, bodily injury and property damage of any nature." The Careys closed on the property in October 2001 and took possession the next month. Shortly thereafter, the Careys allegedly discovered past leak sites, water damage bleeding through fresh paint, and two active leaks in the roof, none of which were mentioned in Merritt's report. In addition, the Careys allege that, after the first rain, numerous other leaks were revealed, causing water damage in virtually every room in the house. As a result, on August 2, 2002, the Careys filed suit against the Harmans and Merritt, alleging breach of contract, misrepresentation, fraud, and negligence.[1] Merritt filed a motion for summary judgment, citing the exculpatory agreement. The Chancery Court of Shelby County granted this motion, stating there were no genuine issues of material fact. The Careys timely appealed and raise the following issues for our review:

I. Whether the exculpatory agreement is void as against public policy and the trial court erred when it enforced this agreement; and

II. In the alternative, if the exculpatory clause does not violate public policy, whether the agreement is unenforceable because the Careys did not agree or assent to the exculpatory provision until after the inspection had been performed.

Merritt also raises the following additional issue:

III. Whether the trial court correctly decided that no genuine issues of material fact existed and summary judgment was appropriate.

For the following reasons, we reverse the trial court's grant of summary judgment.

---

1. This appeal involves Merritt only and the exculpatory clause the Careys signed. No motion for summary judgment has been granted in favor of the Harmans.

## Standard of Review

Our Supreme Court has stated the following about appellate review of summary judgment motions:

The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown,* 955 S.W.2d 49, 50–51 (Tenn.1997); *Cowden v. Sovran Bank/Cent. S.,* 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall,* 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.,* 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.,* 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall,* 847 S.W.2d at 215.

To properly support its motion, the moving party must either affirmatively negate an essential element of the nonmoving party's claim or conclusively establish an affirmative defense. *See McCarley v. W. Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn.1998); *Robinson*

*v. Omer,* 952 S.W.2d 423, 426 (Tenn. 1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. W. Quality Food Serv.,* 960 S.W.2d at 588; *Robinson v. Omer,* 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

The standards of governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the non-moving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer,* 952 S.W.2d at 426; *Byrd v. Hall,* 847 S.W.2d at 210–11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995).

*Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 88–89 (Tenn.2000) (footnote omitted).

## Home Inspectors and Public Policy

 Plaintiffs argue that the trial court erred when it enforced the exculpatory clause the Plaintiffs signed before receiving Defendant's inspection report. Specifically, the Plaintiffs contend that the clause should have been declared void because it violates public policy. In general, Tennessee courts recognize that, barring an exception, "parties may contract that one shall not be liable for his negligence to

another." *Crawford v. Buckner,* 839 S.W.2d 754, 756 (Tenn.1992) (citing *Empress Health & Beauty Spa, Inc. v. Turner,* 503 S.W.2d 188 (Tenn.1973); *Chazen v. Trailmobile, Inc.,* 215 Tenn. 87, 384 S.W.2d 1 (1964); *Moss v. Fortune,* 207 Tenn. 426, 340 S.W.2d 902 (1960); *Dixon v. Manier,* 545 S.W.2d 948 (Tenn.Ct.App. 1976)). One such exception, public policy, was discussed by the Tennessee Supreme Court, which enumerated several factors for a court to consider to determine if an exculpatory clause violates public policy. *Olson v. Molzen,* 558 S.W.2d 429, 431 (Tenn.1977). Those factors are as follows:

[a.] It concerns a business of a type generally thought suitable for public regulation.

[b.] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

[c.] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

[d.] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

[e.] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

[f.] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Olson,* 558 S.W.2d at 431 (citing *Tunkl v. Regents of Univ. of Cal.,* 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963)). A party need not show all of these factors in order to invalidate an exculpatory clause, and generally, a transaction with some of these circumstances present is sufficient to render such clause void. *Id.* In general, application of the *Olson* factors is limited to circumstances involving a contract with a profession, as opposed to "tradesmen in the marketplace." *Id.* at 430; *see also Russell v. Bray,* 116 S.W.3d 1, 6 (Tenn.Ct. App.2003) (citing *Parton v. Mark Pirtle Oldsmobile–Cadillac–Isuzu, Inc.,* 730 S.W.2d 634, 636 (Tenn.Ct.App.1987)).

Defendant contends that, though he is a home inspector and owner of Merritt Residential & Commercial Inspections, there is no evidence in the record to suggest he thought of himself as a professional, distinguishing this case from *Russell v. Bray,* where the Eastern Section of this Court held that an exculpatory clause for a home inspector was void as against public policy. However, given that Defendant's business was home inspection and that he sold his opinions in the form of reports as part of that business, we conclude, as the Court in *Bray* did, that Defendant is a professional and the exculpatory clause should be analyzed under the factors enumerated in *Olson. Bray,* 116 S.W.3d at 6. In addition, Defendant admits that his inspection was conducted in accordance with the Standards of Practice and the Code of Ethics of the American Society of Home Inspectors. Other than the fact that Defendant did not think of himself as a professional or utilize brochures to advertise his business, Defendant fails to support the argument that he is only a tradesman in the marketplace.

Upon examining the first factor, we are mindful that Tennessee does regulate the inspection of new residential buildings.

Tenn.Code Ann. §§ 62–6–301 to –302 (2003). We agree with the *Bray* court that "[a]lthough inspectors of existing residential buildings are not specifically regulated, the fact that Tennessee regulates some inspectors of residential buildings indicates Defendants' business is the type of business that is generally thought *suitable* for public regulation." *Bray*, 116 S.W.3d at 6 (emphasis in original); Tenn.Code Ann. §§ 62–6–301 to –302. The Court in *Bray* also noted that the defendant in that case admitted to holding a contractor's license and that defendant believed he was required to meet statutory criteria to perform inspections. We agree with the *Bray* court that such a belief should not be controlling. However, we do note that, while not admitting to having a license, Defendant did admit he performed the inspection in accordance with the ethics code of the American Society of Home Inspectors ("ASHI"). One of the statutory methods of gaining legal permission to inspect new homes, pursuant to Tenn.Code Ann. § 62–6–301, is to hold a membership with the ASHI. Such admission evidences the Defendant's awareness of the regulation of his profession. Therefore, for these reasons, Defendant's business should be considered the type suitable for public regulation.

Next, we hold that the second factor of *Olson* applies to the circumstances of this case. Defendant is "engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public." *Olson*, 558 S.W.2d at 431. Again, Defendant attempts to argue that this case is distinguishable from *Bray*, relying on the fact that Defendant did not publish a brochure of services provided like the defendant in *Bray*. Such a difference is irrelevant for purposes of the second criterion of *Olson*. The purchase of a home is, perhaps, the largest investment an average

person will make. In addition, as the Court in *Bray* notes:

> Our legislature also has recognized that inspections of residential property are of great importance to the public. *See* Tenn.Code Ann. § 66–5–201 (2002) (stating the statutorily required disclosure statement "is not a warranty of any kind by a seller and is not a substitute for inspections either by the individual purchasers or by a professional home inspector."); Tenn.Code Ann. § 66–5–202(1) (2002) (stating "the disclosure form shall contain a notice to prospective purchasers and owners that [they] ... may wish to obtain professional advice or inspections of the property."); Tenn.Code Ann. § 66–5–210 (2002) (providing that the required disclosure contain a statement indicating "this is not a warranty, or a substitute for any professional inspections or warranties that the purchasers may wish to obtain.").

*Bray*, 116 S.W.3d at 7. We note that, in addition to the recognition of the importance of home inspections, such inspections of plumbing, electrical wiring, appliances, roofing, and heating/cooling are likely beyond the ability of members of the general public. *See id.* Therefore, such inspections by the Defendant are of great importance to the public and a matter of practical necessity for most members of the public.

Next, we consider whether Defendant was willing to perform this service for any member of the public who seeks it, or for a member coming within certain established standards. Though Defendant represents himself as a company and places that company name on the cover of his inspection reports, there is no other evidence in this record to support the third criterion that Defendant held himself out to the public as willing to perform services for any member of the public. Therefore, the third

factor in *Olson* does not apply to the circumstances of this case.

In addition, after our review of the record, we are unable to apply the fourth and fifth factors of *Olson* to the present case. There is simply no evidence regarding the "economic setting" of the transaction was or if such setting gave Defendant a decisive advantage in bargaining power. We are unable to determine from the record whether Plaintiffs could have used another inspector without the requirement of signing a contract with an exculpatory clause. *See Bray,* 116 S.W.3d at 7. In addition, while there is evidence, from the statements of Cindi Carey in her affidavit, that the Plaintiffs did not have the option of paying a reasonable fee to Defendant to obtain protection against Defendant's negligence, there is no evidence that Defendant held a superior bargaining position. *See id.* at 7–8.

Finally, the sixth criterion of *Olson* does find application to the circumstances of this case. Defendant argues that, because Defendant did not utilize a brochure like the defendant in *Bray,* there is no evidence that the property of the Plaintiffs was placed under the control of the Defendant, subject to the risk of his carelessness. Again, this distinction from *Bray* has no application to this factor and only affects the third factor from *Olson,* regarding how Defendant presented himself to the public. The sales contract between the Plaintiffs and the Harmans states, in relevant part:

> Purchaser shall inspect Property or engage a qualified home inspector of Purchaser's choice, who is also acceptable to Seller, to inspect Property prior to closing, at Purchaser's expense, for the purpose of evaluating the plumbing, heating, electrical, air conditioning, fireplace, appliances, and, if one exists, the swimming pool, its equipment and accessories, to determine if they are in normal working order, and if the roof has any visible leaks, and/or structural defects, or standing water or moisture damage under any conventional foundation.... The inspection report shall determine what repairs, if any, are reasonably necessary to place the above-listed appliances, systems, equipment, and improvements in normal working order, and/or to repair or make the roof free of visible leaks. Seller agrees to make and pay for such repairs, subject to the limitation provided in Paragraph 10 hereof, but Seller shall not have any obligation to remedy or repair any item other than those listed herein ... If Purchaser does not inspect or have Property inspected within 14 days from the effective date of this Contract, then Purchaser shall lose the right of inspection.

The contract later states in Paragraph 10 that the Seller will pay the first $1,000 in repairs and if the necessary repairs exceed this amount, the Plaintiffs have the option of either accepting the house with the repairs or terminating the contract. Like the circumstances in *Bray,* the sale of the property in this case was conditioned upon the above listed items being in normal working order. Also as in *Bray,* the findings by the home inspector could have been a deal breaker, since the Plaintiffs and the Harmans were required to accept the findings of the home inspector regarding necessary repairs. Therefore, in this case, the Plaintiffs' property, in the form of their contractual right to inspect the home, was under the control of Defendant and subject to the risk of his carelessness.

For the reasons stated above, we hold that the exculpatory clause between the Plaintiffs and Defendant is contrary to public policy and void. Therefore, we reverse the trial court's grant of summary judgment in favor of Defendant. Because

of this disposition, the second issue raised by the parties, concerning whether Plaintiffs assented to the exculpatory clause, need not be addressed.

### Genuine Issues of Material Fact

 Finally, Defendant contends that, even if the exculpatory clause is unenforceable, summary judgment in his favor is still appropriate. "In negligence cases, summary judgment is only appropriate when the inferences which may be drawn from the uncontroverted facts are so certain that all reasonable persons must agree with them." *Buckner v. Varner*, 793 S.W.2d 939, 940 (Tenn.Ct.App.1990) (citing *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547 (Tenn.1981)). Generally, a trial court should be hesitant to grant a motion for summary judgment in a negligence case because the determinative issues should be decided by the trier of fact after viewing the witnesses' demeanor and evaluating the witnesses' credibility. *Id.* (quoting *Knapp v. Holiday Inns, Inc.*, 682 S.W.2d 936 (Tenn.Ct.App.1984)). Upon our review of the record, we hold that, because the exculpatory clause is unenforceable between these parties, there remain genuine issues of material fact regarding Plaintiffs' claim for negligence against Defendant. Defendant in this case, absent the exculpatory clause, simply fails to fulfill his burden of affirmatively negating an essential element of Plaintiffs' claim or conclusively establishing an affirmative defense. Therefore, the grant of summary judgment was inappropriate for this case.

### Conclusion

For the reasons stated above, we reverse the trial court's grant of summary judgment in favor of Defendant and remand this case for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellee, Donald L. Merritt, d/b/a Merritt Residential & Commercial Inspections, for which execution may issue if necessary.

In re J.J.C., D.M.C., and S.J.B. a/k/a K.