# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 9, 2008 Session

## HOLLY THRASHER v. RIVERBEND STABLES, LLC, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 06C-97     Walter Kurtz, Judge**

---

**No. M2007-01237-COA-R3-CV - Filed May 21, 2008**

---

Plaintiff appeals the summary dismissal of her complaint arising out of the death of her Tennessee Walking Horse while the horse was being trained at Riverbend Stables, LLC. Plaintiff filed suit claiming the horse died as a result of the defendants' negligence and gross negligence. The trial court dismissed the complaint upon a finding that the claims of negligence were barred by the exculpatory provisions in the parties' written agreement and Plaintiff had failed to make out a prima facie claim of gross negligence. Finding the exculpatory agreement enforceable and the evidence fails to establish a genuine issue of material fact concerning the claims for gross negligence or recklessness, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Kirk L. Clements, Goodlettsville, Tennessee, for the appellant, Holly Thrasher.

Michael H. Johnson and M. Kristin Selph, Nashville, Tennessee, for the appellees, Riverbend Stables, LLC, Stephen Daniel and Michael Daniel.

## OPINION

In February of 2004, Holly Thrasher ("Plaintiff") began boarding her Tennessee Walking Horse, Lola, at Riverbend Stables, LLC[1] for training purposes. When Plaintiff began boarding Lola at Riverbend, she executed an Agreement that contained the following clause:

> 6.     Riverbend and its employees, owners and agents shall not be liable to Owner or any of Owner's guests for any negligent conduct or malfeasance of any sort, including any personal injury or property damage (including the injury or death of a horse). Owner agrees to indemnify and hold harmless

---

[1]Riverbend Stables, LLC has only two members, Michael Daniel and Stephen Daniel.

Riverbend from any such liability.  In the event a claim is filed against Riverbend, Owner agrees to indemnify Riverbend for all loss and damages, including reasonable attorney fees, resulting from the filing of any such claim.

On August 18, 2005, Michael Daniel, a Riverbend trainer and member of the LLC, attached Lola to an equine exercise machine known as a "hot walker."  Riverbend had purchased this machine two weeks earlier from Robert Nelms, who had used the machine with approximately thirty horses per day prior to the sale.  While attached to the machine, Lola became spooked and lunged forward, impaling herself with a lead bar that extended from the machine.  Tragically, Lola died as a result.

Plaintiff filed suit on January 13, 2006, against Riverbend Stables, LLC, Steven Daniel, and Michael Daniel (collectively, "Defendants") claiming that Defendants were negligent, grossly negligent, and reckless in the training and boarding of her horse.  Following discovery, Defendants filed a motion for summary judgment claiming, *inter alia*, that the exculpatory clause relieved them of liability.   After a hearing on the motion, the trial court granted Defendants' motion, summarily dismissing all of Plaintiff's claims.  Specifically, the trial court found that "[r]elying on the factors enumerated in *Olson v. Molzen*, 558 S.W.2d 429, 431 (Tenn. 1977), [t]he Exculpatory Clause in the Defendants' contract relieves them from all negligence." Further, "[t]he contract also is not void as against public policy."  As to gross negligence, the trial court held that there was no evidence that the Defendants' actions were wanton, willful, or showed a conscious disregard for the safety of others and therefore Plaintiff had failed to show that the alleged acts or omissions of Defendants constituted gross negligence.  Accordingly, the claim of gross negligence was summarily dismissed. This appeal followed.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment.  Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).  This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).  When reviewing the evidence, we first determine whether factual disputes exist.  If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Summary judgment is appropriate where a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall*, 113 S.W.3d 721.  Moreover, it is proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115,

121 (Tenn. Ct. App. 2001); however, it is not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04. The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695. Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

## ANALYSIS

Plaintiff presents two issues. First, Plaintiff contends the exculpatory clause is void as against public policy. Second, Plaintiff contends genuine issues of material fact exist as to whether Defendants' conduct constituted gross negligence.

### EXCULPATORY CLAUSE

It is well established in Tennessee that "subject to certain exceptions, parties may contract that one shall not be liable for his negligence to another." *Olson v. Molzen*, 558 S.W.2d 429, 430 (Tenn. 1977) (citing *Moss v. Fortune*, 340 S.W.2d 902 (Tenn. 1960)). There are, however, public policy exceptions to this general rule. *Id*. As the Supreme Court explained in *Olson*, certain professional relationships, such as those with doctors or lawyers, require a greater responsibility and, therefore, a release from liability of the professional's negligence would be "obnoxious." *Henderson v. Quest Expeditions, Inc.*, 174 S.W.3d 730 (Tenn. Ct. App. 2005) (citing *Olson*, 558 S.W.2d at 430).

The Supreme Court identified criteria to consider when determining whether an exculpatory provision is contrary to public policy. *Henderson*, 174 S.W.3d at 732 (citing *Olson*, 558 S.W.2d at 431). Criteria to be considered include:

[a.] It concerns a business of a type generally thought suitable for public regulation.

[b.] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

-3-

[c.] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

[d.] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

[e.] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

[f.] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Olson*, 558 S.W.2d at 431. It is not necessary that all six criteria be present. *Russell v. Bray*, 116 S.W.3d 1, 6 (Tenn. Ct. App. 2003). An exculpatory agreement may be deemed offensive, and thus void, if less than all six of the criteria are present. *Id*. (citing *Olson*, 558 S.W.2d at 431).

The application of the foregoing criteria, however, is to be "limited to situations involving a contract with a professional person, rather than a tradesman." *Id.* (citing *Olson*, 558 S.W.2d at 430; *Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc.*, 730 S.W.2d 634, 636 (Tenn. Ct. App. 1987) (stating "we do not think the Supreme Court intended the [*Olson*] rule to be applied to transactions by what the Court termed 'tradesmen in the market place.'")).

Plaintiff contends the *Olson* public policy exception to the enforceability of an exculpatory provision applies in this case because Defendants are professionals. This contention is based primarily on the holding in *Russell v. Bray* that a "home inspector" is a professional, not a tradesman, and the exculpatory provision was held to be unenforceable. 116 S.W.3d at 6. The *Russell* court concluded that home inspectors were not like automobile mechanics or other tradesmen because, as the court stated, home inspectors "are not performing *hands-on tasks to create or repair a product*." *Id.* (emphasis added.) The court went on to conclude that home inspectors, like many professionals, "sell their *expert analysis and opinion*." *Id.* (emphasis added.) The court also found it significant that Tennessee regulates home inspectors and requires home inspectors to hold "a contractor's license or a proper certification or membership." *Id.*

We, however, believe the public policy exception does not apply to this case. Although Defendants may possess a great deal of expertise in boarding and training horses, we find the duty owed by Defendants for the services at issue here is not equivalent to the public duty a doctor owes her patient or a lawyer owes his client.

The Federal District Court in the matter of *Teles v. Big Rock Stables, L.P.*, 419 F. Supp. 2d 1003, 1008 (E.D. Tenn. 2006) came to a similar conclusion. The District Court found that owners and operators of horse stables do not fall under the public policy exception prohibiting exculpatory clauses. As the court explained:

> It is well settled in Tennessee that parties may contract that one shall not be liable for his negligence to another but that such other shall assume the risk incident to such negligence. *Moss v. Fortune*, 340 S.W.2d 902 (Tenn. 1960). This rule is subject to exception. A party cannot contract away his liability for willful or gross negligence. *Memphis & Charleston R.R. Co. v. Jones*, 39 Tenn. 517 (1859). *Neither can a party contract away liability if the duty under which he acts is a public one. Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Saulsbury*, 90 S.W. 624, 626 (Tenn.1905); *Carolina, Clinchfield & Ohio Ry. Co. v. Unaka Springs Lumber Co.*, 170 S.W. 591 594 (Tenn.1914); *Hartford Fire Ins. Co. v. Chicago, Milwaukee & St. Paul Ry. Co.*, 175 U.S. 91 (1899).
>
> The existence of a public duty which would disallow giving effect to an exculpatory provision is determined by looking at several factors. If the service provided is the type which may generally be subject to public regulation then the duty probably exists. *Smith v. Southern Bell*, 364 S.W.2d 952, 958 (Tenn. Ct. App.1962). Other factors include the degree to which the service is of practical necessity for some members of the public, whether the service is offered to any member of the public who seeks it or qualifies for it, whether one party has greater bargaining power than members of the general public, whether in exercising that bargaining power, the party presents a standardized "adhesion" contract making no provision whereby protection against negligence may be obtained, or whether the person or property of one party is placed under the control of the other. *Olson v. Molzen*, 558 S.W.2d 429, 431 (Tenn. 1977). Particularly offensive in Tennessee are exculpation contracts executed by persons in professional vocations. *Id.* at 432.
>
> *Analyzing the facts of this case under the foregoing rules, the court finds that a horse stable generally, and the services provided in this case specifically, are governed by the general rule and do not fall under the exception prohibiting exculpatory clauses*.

*Teles*, 419 F. Supp. 2d at 1007-08 (emphasis added.)

We, therefore, conclude that the services at issue here do not fall under the exception prohibiting exculpatory clauses. Accordingly, we affirm the trial court's determination that the exculpatory clause contained in the agreement between Plaintiff and Riverbend Stables, LLC, is enforceable. As a consequence, Plaintiff's claim of ordinary negligence is barred by the parties's agreement.

In addition to asserting a claim of ordinary negligence, Plaintiff asserted a claim that Defendants were "grossly negligent, and reckless in the training and boarding of her horse." The parties' agreement bars Plaintiff's claim of ordinary or general negligence, however, it does not bar a claim of gross negligence. *See Jones v. Tenn. Riders Instruction Program*, No. M2006-01087-COA-R3-CV, 2007 WL 393630, at *1 n.3 (Tenn. Ct. App. Feb. 5, 2007) (no Tenn. R. App. P. 11 application filed) (citing *Buckner v. Varner*, 793 S.W.2d 939, 941 (Tenn. Ct. App. 1990) (stating that an exculpatory clause in a contract "will not operate to protect a party who is guilty of gross negligence")).

The trial court summarily dismissed the claim of gross negligence based on the following finding:

> The Plaintiff failed to show that the alleged acts or omissions of Riverbend Stables constitute gross negligence and that the Plaintiff . . . failed to show a conscious neglect of duty. Further there is no evidence that the Defendants' actions were wanton, willful, or showed a conscious disregard for safety of others.

> The Court particularly also relies upon the new case of *Jones v. Tennessee Riders Instruction Program, Inc.*, 2007 WL 393630 (Tenn. Ct. App. 2007). Therefore, pursuant to T.R.C.P. 56, the Defendants have demonstrated that there are no genuine issues of material fact . . . ."

Plaintiff contends the summary dismissal of her claim of gross negligence was error because there exists a genuine issue of material fact as to whether Defendants' conduct constituted gross negligence.

In order to prevail on a claim of gross negligence, a plaintiff must first establish that the defendant engaged in conduct that amounts to ordinary negligence. *See Menuskin v. Williams*, 145 F.3d 755, 766 (6th Cir. 1998). In addition to proving that the defendant has committed a negligent act, the plaintiff must prove that the act was "done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Ruff v. Memphis Light, Gas, and Water Div.*, 619 S.W.2d 526, 528 (Tenn. Ct. App. 1981) (quoting *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972)). Gross negligence is defined as "a conscious neglect of duty or a callous indifference to consequences" or "such entire want of care as would raise a presumption of a conscious indifference to consequences." *Jones*, 2007 WL 393630, at *2 (citing *Buckner v. Varner*, 793 S.W.2d 939, 941 (Tenn. Ct. App. 1990); *Thomason v. Wayne County*, 611 S.W.2d 585 (Tenn. Ct. App. 1980); *Sampley v. Aulabaugh*, 589 S.W.2d 666 (Tenn. Ct. App. 1979)).

The evidence upon which Plaintiff relies is found in the affidavits of her two expert witnesses, Paul Walker and Richard Moores. Paul Walker testified that he had not "seen a hot

walker that has a lead bar at chest level that is less than forty (40) years old." He further stated that "[a] hot walker that has a bar below head level is very dangerous" and that "[g]iven the facts surrounding the death of Lola, her death was a foreseeable result and should have been foreseeable to any professional trainer." Plaintiff's other expert, Richard Moores, testified that he had never seen a hot walker, other than the one at issue, that had a lead bar at chest level. Moores also stated that he would never put a horse on this hot walker and, in his professional opinion, the hot walker was "inherently dangerous."

The fact the hot walker was forty or more years old is neither relevant nor material to the issue of gross negligence. The fact neither expert would use this hot walker is also of no consequence to the issue of gross negligence. The experts' testimony that the hot walker was very dangerous or inherently dangerous is relevant and material to the issue of gross negligence. Whether the experts' opinions as to the inherent danger of this hot walker is sufficient to prove a claim of gross negligence requires further examination.

An act which otherwise would be nothing more than simple negligence may amount to gross negligence if the defendant's negligent conduct also involves a dangerous instrumentality. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994) (driving while intoxicated); *accord Phelps v. Magnavox Co.*, 497 S.W.2d 898, 906 (Tenn. Ct. App. 1972) (supplying electricity). Here, Plaintiff has presented proof that the hot walker was inherently dangerous. There is, however, no proof in the record that Defendants conduct, other than the mere use of the hot walker, was negligent in any manner. Thus, Plaintiff contends that Defendants were grossly negligent because they used the hot walker to train Lola. Thus, Plaintiff is asking this court to hold, as a matter of law, that Defendants' non-negligent use of an inherently dangerous device constitutes gross negligence. If we obliged Plaintiff in this manner, we would set a precedent that persons are strictly liable for injuries resulting from the non-negligent use of an inherently dangerous device. We decline the invitation to establish such a precedent.

In Tennessee, a person who engages in an "ultrahazardous activity"[2] is strictly liable to those who are injured as a result of such activity, without the need of proof that the defendant's conduct constituted gross negligence. *See England v. Burns Stone Co., Inc.*, 874 S.W.2d 32, 37 (Tenn. Ct. App. 1993); *see also Leatherwood v. Wadley*, 121 S.W.3d 682 (Tenn. Ct. App. 2003) (holding that if the defendant engaged in an ultrahazardous activity, "[t]he negligence or care exercised by the defendant in carrying out said activity is irrelevant") (citing *Miller v. Alman Constr. Co.*, 666 S.W.2d 466, 468 (Tenn. Ct. App. 1983)). There is, however, no known authority in Tennessee that stands for the proposition that a person is strictly liable to those injured as a result of the defendant's non-negligent use of an inherently dangerous device.

---

[2]Pursuant to Restatement (Second) of Torts § 520, Abnormally Dangerous Activities, the following factors are to be considered to determine whether an activity is abnormally dangerous: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes. Restatement (Second) of Torts § 520 (1977).

Power tools, such as an electric saw, are inherently dangerous but the mere fact someone is injured by another's use of an electric saw is not sufficient to sustain a claim that the defendant's non-negligent use of the dangerous tool constituted gross negligence. Moreover, weapons, such as guns or knives, can be dangerous devices if not properly used, however, the mere fact one is injured by another's use of a gun or knife is insufficient, standing alone, to establish that the defendant's use of the gun or knife constituted gross negligence.

An act which otherwise would be nothing more than simple negligence may amount to gross negligence if the defendant's negligent conduct also involves a dangerous or lethal instrumentality. *See Cook*, 878 S.W.2d at 938; *see also Phelps*, 497 S.W.2d at 906. Plaintiff has presented sufficient evidence to create a dispute of material fact concerning the inherent danger posed by Defendants' use of the hot walker to train Lola; however, Plaintiff has provided no evidence of any other negligent conduct by Defendants. As we stated earlier, to prevail on her claim of gross negligence, Plaintiff must first establish, or in this case create a dispute of fact, that the defendant engaged in conduct that amounts to ordinary negligence. *See Menuskin*, 145 F.3d at 766. Because Plaintiff has failed to create a dispute of fact concerning the first element of a claim of gross negligence, by failing to provide evidence upon which to base a finding that Defendants engaged in negligent conduct, Defendants are entitled to summary judgment as a matter of law. We therefore affirm the summary dismissal of Plaintiff's claim of gross negligence.

## In Conclusion

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Plaintiff.

_____
FRANK G. CLEMENT, JR., JUDGE